# Gaw, Appellant, *v.* Bennett.

[Marked to be reported.]

*Gambling contracts—Purchase and sale of stock on margin.*

A promissory note given to a broker to cover losses incurred in stock gambling operations is void.

A wagering contract is one in which the parties in effect stipulate that they shall gain or lose upon the happening of an uncertain event in which they have no interest, except that arising from the possibility of such gain or loss; and whether the contract is a wagering one or not is a question for the jury, unless the entire contract, unexplained by oral testimony, is in writing.

*Evidence of wagering contract—Submission to jury.*

In an action on a promissory note given by defendant's intestate, defendant claimed that the note was given in payment of a balance due on stock gambling operations, and introduced evidence which tended to show that decedent had about $7,700 invested in his business, and was in receipt of an income of about $5,000 a year; that plaintiffs, stock brokers, bought for him in the course of three years nearly $70,000 worth of stocks, and sold the same at a loss of about the amount of the note; that none of the stock was paid for by decedent, or delivered to him. The court submitted the whole case to the jury, to determine whether or not the note was given in settlement of a gambling contract. *Held*, not to be error.

Argued Jan. 16, 1893.   Appeal, No. 104, July T., 1892, by plaintiffs, H. L. Gaw & Co., from judgment of C. P. No. 3, Phila. Co., March T., 1888, No. 240, on verdict for defendant, Charles H. Bennett, administrator of Henry K. Bennett, deceased.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Assumpsit on promissory note.

At the trial, before FINLETTER, P. J., defendant claimed that the note was given in settlement of gambling operations, and introduced evidence which tended to show that Henry K. Bennett, the decedent, had invested in his business of selling yarn on commission about $7,700, and had no other property, and that the net profits of his business were about $5,000; that plaintiffs, who were stock brokers, bought and sold stock for decedent during the period from Jan. 19, 1878, to Aug. 29, 1881; that during this time they bought for decedent stock at

buyer's option, which, with interest, commissions and assessments, amounted to $69,142.64, and sold all of the stock thus bought, as a rule within a month or two after it was bought, ending in a loss which amounted to about the amount of the note in suit ; that none of the stock was paid for by Bennett, and none was delivered to him. The only cash received by plaintiffs from decedent was the sum of $400, paid as a lump sum and not on account of the purchase of any particular stock ; also the proceeds from the sale of 200 shares of Pittsburgh, Titusville and Buffalo stock left with them by decedent.

Plaintiffs' point was among others as follows :

" 6. Under all the facts in the case the verdict must be for the plaintiffs, if the note in suit was executed by the decedent." Refused. [1]

Defendant's points were as follows :

" 1. If the jury find from the evidence that the accounts between the plaintiffs and H. K. Bennett, the maker of the note in suit, show a mere settlement of differences, which the said note was given to secure, and that there was no actual delivery of, or intention by the parties to deliver or receive the various stocks mentioned in said accounts, then the transaction was illegal, and their verdict should be for the defendant." Affirmed. [2]

" 2. If the jury believe from the evidence that H. K. Bennett, the maker of the note in suit, made arrangements with the plaintiffs to purchase stocks from time to time for his account, and that it was understood between the plaintiffs and the said H. K. Bennett that the stocks so purchased were not to be delivered to him, but that the plaintiffs were to pay over to him any gains resulting from a rise in the market, and that the said H. K. Bennett should secure the plaintiffs against losses resulting from a fall in the market, and that the said note was given to the plaintiffs to secure them against such losses or to pay them for such losses, then there can be no recovery on the said note, and the verdict should be for the defendant." Affirmed. [3]

" 3. If the jury believe that the various stock transactions between H. K. Bennett, the maker of the note in suit, and the plaintiffs were by way of margins, settlement of differences and payments of the gain or loss, without any intention to deliver the stocks to the said H. K. Bennett, and that

the said note was given to secure plaintiffs against losses so incurred, or to pay them for such losses, the transactions were mere wagers, and their verdict should be for the defendant." Affirmed. [4]

"4. If the jury find that the various stock transactions between the plaintiffs and the said H. K. Bennett were by way of margins, settlement of differences and payment of the gain or loss, without any intention to deliver the stocks to H. K. Bennett, and that the plaintiffs advanced or paid money out for the account of the said H. K. Bennett to aid him in said stock transactions, there can be no recovery for the money so advanced or paid out, because the said transactions were illegal, and their verdict should be for the defendant." Affirmed. [5]

"5. If the jury find from the evidence that the magnitude of the alleged purchase of stock by the plaintiffs for the account of H. K. Bennett, the maker of the note in suit, was greatly disproportionate to the amount of money advanced by the said H. K. Bennett to the plaintiffs, they should consider that circumstance in determining whether or not the transaction was one of gambling, and if they so find their verdict should be for the defendant." Affirmed. [6]

"6. If the jury find that the various stock transactions between the plaintiffs and the said H. K. Bennett out of which the note in suit grew were by way of margins, settlement of differences and payment of the gain or loss, without any intention to deliver the stocks to the said H. K. Bennett, the transactions were mere wagers, were contrary to the policy of the law, and the plaintiffs are not entitled to recover commissions for the stock so purchased and sold, and their verdict should be for the defendant." Affirmed. [7]

"7. If the jury find that the transactions on H. K. Bennett's part did not contemplate an actual purchase of the stocks by him, or delivery of the same to him, but only contemplated the purchase and sale of the stocks through the plaintiffs, the difference in the gain and loss arising from difference in prices to be settled for from time to time by margins and advances, and that the plaintiffs, understanding such to be the character of the transactions on H. K. Bennett's part, rendered the services and made the advances for which the note was given, and carried the stocks while the transactions were going on, then

the plaintiffs cannot recover, and the verdict should be for the defendant." Affirmed. [8]

" 8. If the jury find from the evidence that the note in suit was given in settlement of a cash balance resulting from a continued series of stock transactions, extending over a period of more than two years, between the plaintiffs and H. K. Bennett, the maker thereof, and thàt none of said stocks were ever delivered by the plaintiffs to the said H. K. Bennett, or paid for by him, they have a right to regard that as evidence that there was no intention by the parties to deliver or receive said stocks, and if they so find their verdict should be for the defendant." Affirmed. [9]

" 9. In determining and arriving at the intention of the parties, the jury have a right, and it is their duty, to consider all the acts of the parties, and also the nature and character of the accounts rendered by the plaintiffs to the said H. K. Bennett." Affirmed. [10]

" 10. The jury are not concluded by accounts kept by either of the parties in their books of account, but in ascertaining the real intention of the parties may go behind their books of account and behind the mere form which is given to the transactions, and are to consider the real purpose and intent of the parties and the real nature of their dealings with each other." Affirmed. [11]

" 11. If the jury find that the transaction was a gambling one on H. K. Bennett's part, and was known or believed to be such by the plaintiffs, and that the services and advances of the plaintiffs, which constitute the cause of action, were made and rendered in carrying it into effect, their verdict should be for the defendant." Affirmed. [12]

" 12. If the jury find from the evidence that the stock transactions out of which the note in suit grew began January 19, 1878, continued actively until August 25, 1880, being a period of two years and seven months, and during that time twenty-one hundred shares of stock of various kinds were purchased for the account of H. K. Bennett, and they also find that none of said shares of stock were actually delivered to the said Bennett, but that in rendering the accounts there was only a striking of balances and an ascertainment of differences, it is evidence from which the jury may presume that there was no

intention by the parties to actually deliver or receive the stocks." Affirmed. [13]

" 13. It is not necessary or requisite that the intentions of the parties should be actually proven to have been expressed in words spoken or written, but it may be inferred by the jury from their acts, and from a consideration of all the circumstances surrounding the case." Affirmed. [14]

The court charged in part as follows:

" I have read these points to you, gentlemen. Some of them are very long, and I do not think you will recollect much of them. It all narrows down to the simple question of the intention of the plaintiffs. If the intention of the plaintiffs was to purchase and sell the stock, and their intention was not merely to hold Bennett responsible for the profits and losses, then your verdict must be for the plaintiffs. If, however, the intention was otherwise, that their intention was simply to settle with him on the profits and losses, then your verdict must be for the defendant." [15]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were, (1–15) instructions, quoting them.

*John G. Johnson, C. Berkeley Taylor* with him, for appellant.—In the cases in Pennsylvania there has always been testimony as to the real character of the transaction. It has never been sought to prove the illegality of the contract simply by showing that there had been purchases and sales of stock by the broker on behalf of the customer: Brua's Ap., 55 Pa. 294; Smith v. Bouvier, 70 Pa. 325; Maxton v. Gheen, 75 Pa. 166; Fareira v. Gabell, 89 Pa. 89; North v. Phillips, 89 Pa. 250; Ruchizky v. De Haven, 97 Pa. 202; Dickson v. Thomas, 97 Pa. 278; Waugh v. Beck, 114 Pa. 422; Thompson v. Reiber, 123 Pa. 457; Peters v. Grim, 30 W. N. 177.

No case can be shown in which, in defending a note purporting to be for an adequate consideration, the defendant, who gave the note, has been permitted to escape payment merely by showing that his broker had bought and sold stocks on his account, and had accounted to him for such purchases and sales. In Pennsylvania it is legal to speculate in stocks. It is open to any person to buy stocks on time with the intent to sell them again to third persons, either when the purchased

stocks are called, or at a later time. So long as the transaction is real and not pretended, it is legal, and all those who take part in it, either by making the purchase, or by negotiating the purchase and sale, or by advancing in and about the same, may recover.

Whenever we find a case in which the broker has made actual purchases, has taken actual deliveries, and has made actual sales of stocks, on behalf of the principal, we have one in which the broker is entitled to recover for his advances, unless the principal shall establish an agreement different from that evidenced by the account of purchases and sales, and not to be inferred from the account itself.

The construction of a written instrument is for the court: Duffield v. Hue, 129 Pa. 94; Esser v. Linderman, 71 Pa. 76; Fisher v. Moyer, 17 W. N. 500; Foster v. Berg & Co., 104 Pa. 324; Harley v. Caldwell, 2 Miles, 334; Hottenstein v. Kohler, 37 Leg. Int. 333.

Where a document or agreement is equally consistent with good faith, with a legal and an illegal construction, the court is bound to adopt the construction which is in favor of good faith, honesty and legality: Wh. Ev. 1249; Lewis v. Davison, 4 M. & W. 654; Greenwood v. Lowe, 7 La. An. 197; Horan v. Weiler & Ellis, 41 Pa. 470; Young v. Edwards, 72 Pa. 257; Insurance Co. v. Delpeuch, 3 W. N. 277.

*Furman Sheppard*, *Avery D. Harrington* with him, for appellee. — That the transactions were gambling is shown by (1) the rapidity of the transactions; (2) the purchase at buyer's option; (3) the purchase without cash from decedent; (4) the debt and credit interest account on differences merely; (5) the nondelivery of or payment for the stock; (6) sale of same amount of stock that was bought; (7) plaintiff must have known from these facts that defendant's intestate had no intention to pay for the stocks or receive them: Ruchizky v. De Haven, 97 Pa. 202.

If one man really buys and another sells stock, in the ordinary course of business, the vendor delivers the stock to the vendee, and the latter takes and pays therefor. There is no reason, if the transaction be a real one, for payment by vendee to vendor merely of a difference in price. It might be, in one

or two instances, though the transaction was really one of purchase or sale, that a settlement would be in difference. If, however, there was a course of dealing directly between vendor and vendee, in which there was always the payment of a difference, and never a delivery or payment of purchase money, an inference of gambling might well be drawn: Fareira v. Gabell, 89 Pa. 89; Mohr v. Miesen, 49 N. W. R. 863; Rumsey v. Berry, 65 Me. 570; Harvey v. Merrill, 22 N. E. R. 50; Lester v. Buel, 30 N. E. R. 821; Phelps v. Holderness, 19 S. W. R. 921. It was proper to show decedent's financial condition: Myers v. Tobias, 24 W. N. 432; North v. Phillips, 89 Pa. 255.

Transaction in stocks by way of margins, settlement of differences and payment of gain or loss, without any intention to deliver the stocks, are mere wagers: Maxton v. Gheen, 75 Pa. 160; North v. Phillips, 89 Pa. 255; Gheen, Morgan & Co. v. Johnson, 90 Pa. 44; Dickson's Ex'rs v. Thomas, 97 Pa. 278.

It is the province of the jury to determine the nature of the transactions, and to ascertain what the intention of the parties was: Grizewood v. Blane, 11 C. B. 538; Kirkpatrick v. Bonsall, 72 Pa. 160; Fareira v. Gabell, 89 Pa. 89; Peters v. Grim, 30 W. N. 177; Repplier v. Jacobs, 30 W. N. 181; Brua's Ap., 55 Pa. 294; Smith v. Bouvier, 70 Pa. 325; Patterson's Ap., 13 W. N. 154; Waugh v. Beck, 114 Pa. 422.

Notes or bonds given to a broker to cover losses incurred in a stock gambling transaction are void: Harper v. Young, 112 Pa. 419; Griffiths v. Sears, 112 Pa. 523.

Illegality in a contract may be shown by a preponderance of evidence, and inferences of illegality may be drawn from circumstances which tend to establish it. It is not necessary that illegality should be proved beyond a reasonable doubt: Wh. Cont. § 344; Ware v. Jones, 61 Ala. 288; Bixby v. Carskaddon, 55 Iowa, 533.

An admixture of parol with written evidence draws the whole case to the jury: Brown v. Campbell, 1 S. & R. 176; Sidwell v. Evans, 1 P. & W. 383; Miller v. Fichthorn, 31 Pa. 252.

OPINION BY MR. JUSTICE STERRETT, February 13, 1893:

This suit is on a note made by defendant's intestate to the order of the plaintiffs for $5,373.89, at six months from August 29, 1881. It appears to have been given for balance of ac-

counts, between the maker and the payees, covering a period of nearly three and a half years.

The note, given in evidence by plaintiffs, made a prima facie case, entitling them to a verdict, unless the testimony introduced by defendant was sufficient to justify the court in submitting to the jury, as was done, questions of fact suggested in his points, for charge, recited in the second to fourteenth specifications of error inclusive. As legal propositions, those points, as well as that part of the learned judge's charge recited in the fifteenth and last specification, appear to be correct. The sole question is whether the evidence was sufficient to warrant the jury in finding the facts of which said points are predicated. This was frankly conceded by the learned counsel for plaintiffs. Having admitted in his printed argument that "the learned judge stated, with thorough understanding, the law applicable to the case," he virtually abandoned all his specifications of error, except the first, which alleges the court erred in refusing to charge as requested by plaintiffs in their sixth point, viz.: "Under all the facts in the case, the verdict must be for the plaintiffs, if the note in suit was executed by defendant's intestate." He thus rested his case solely on the proposition that the evidence was insufficient to warrant a verdict in favor of defendant.

We quite agree that this is the only debatable question in the case. As to the principles of law enunciated by the learned judge in his charge, and in his affirmance of points presented by both parties, the instructions were, if anything, more favorable to the plaintiffs than they should have been. In view of the testimony on which the defendant relied, plaintiffs presented eight points for charge, all of which, except the one above quoted, were affirmed without qualification. The jury were thus instructed, inter alia, as follows:

1. If plaintiffs bought and sold stock for defendant's intestate, paying for and receiving the same in each instance and settling and receiving the money therefor in good faith, then they must find for the plaintiffs, even if they believe said deceased had no intention of ever taking the stocks so purchased or delivering those sold; the fact that he intended to gamble cannot prejudice their case, unless they intended to gamble also.

2. The putting up of margins, retaining possession of stocks

and settling of differences are not enough to stamp the transactions as wagers; there must be facts to show that the actual intent of the parties was to wager merely on the prospective price.

3. If the jury do not find from the evidence an intention to wager by both the plaintiffs and the defendant's intestate, their verdict must be for the plaintiffs.

4. The burden of proof is upon the defendant; it is for him to show, by the weight of evidence, that plaintiffs and decedent were gambling.

These points, as well as those of the defendants above referred to, sufficiently indicate the nature of the defence to the note in suit. For the purpose of showing that the transactions referred to in said points were in fact wagering contracts, on the rise and fall of stocks, known as stock gambling, the defendant gave in evidence accounts rendered his intestate from time to time by the plaintiffs, and also their books containing accounts of their stock transactions with defendant's intestate during several years, and finally culminating in the balance for which the note in suit was given. He also called plaintiffs' bookkeeper and examined him at considerable length in relation to said accounts rendered and book entries, and also introduced witnesses to prove the financial standing of his intestate, the business in which he was engaged, etc.

It is not our intention, nor do we deem it necessary here to review the testimony. The result of the consideration we have given it will be quite sufficient. An examination of the accounts given in evidence, in connection with the oral testimony relating thereto, etc., has failed to convince us that there was any error in submitting the case to the jury for their consideration and determination. Without usurping their appropriate function of considering and weighing testimony and drawing therefrom such reasonable inferences of fact as may be warranted, the court could not have ruled, as matter of law, that the alleged purchases and sales of stocks by plaintiffs for account of defendant's intestate were bona fide business transactions, in which there was an actual receipt or delivery of, and payment for the stocks alleged to have been so purchased or sold, or even any intention of either party that said stocks should be delivered or received and paid for, as the case might be. On the contrary, we think the testimony tended to prove that the intention of

both parties was merely to wager upon the prospective price of said stocks, settle the difference and pay the gain or loss; in other words, their transactions, throughout, were in fact repeated acts of gambling in the stocks referred to in said accounts, and the jury were warranted by the evidence in so finding. In determining what the intention of the parties was, in that regard, the jury had a right to consider the nature and character of the accounts, the acts of the parties, and all the circumstances surrounding their transactions, so far as the same are disclosed by the testimony. They had a right even to go behind the mere form given to their transactions, and ascertain from all the evidence the real purpose of the parties and the actual character of their dealings with each other.

In this state, the law relating to gambling contracts has been firmly settled in a long line of cases, among which are the following: Brua's Ap., 55 Pa. 294; Smith v. Bouvier, 70 Id. 325, 328; Kirkpatrick v. Bonsall, 72 Id. 155; Fareira v. Gabell, 89 Id. 89; North v. Phillips, Id. 255; Dickson's Ex'rs v. Thomas, 97 Id. 278; Waugh v. Beck, 114 Id. 422; Harper v. Young, 112 Id. 419; Griffiths v. Sears, Id. 523.

In Fareira v. Gabell, supra, the judgment of common pleas No. 2 Philadelphia was affirmed on the principles clearly enunciated in the charge of the learned president of that court. It was there held, among other things, that a wagering contract is one in which the parties in effect stipulated that they shall gain or lose upon the happening of an uncertain event in which they have no interest, except that arising from the possibility of such gain or loss; and whether the contract is a wagering one or not is a question for the jury, unless the entire contract, unexplained by oral testimony, is in writing. Also, that notes given to a broker to cover losses incurred in stock gambling operations are void; that money, advanced by a broker to pay such losses, cannot be recovered, nor can the broker's commissions be recovered, because the whole transaction is unlawful.

The testimony in this case was clearly sufficient to warrant its submission to the jury. There was no error in refusing to charge as requested in plaintiffs' sixth point; nor do we find anything in the record that requires a reversal of the judgment.

Judgment affirmed.

MR. JUSTICE MITCHELL dissented.