## Thomas v. Brady.

Where a partnership receives goods on consignment, and one of the firm, alleging that he had instructions to retain the proceeds to secure the claim of a third person without the knowledge of his partner, paid over the proceeds in satisfaction of that claim under a promise of indemnity to himself, after which he was compelled to pay the value of the goods to the rightful owner, the other partner, not being liable to contribute to the loss, is a competent witness for his co-partner in an action on the indemnity.

Proceeds of goods applied in payment of a debt, under a mistaken belief they had been assigned to secure that debt, or that the party paying was indemnified, may be recovered back.

A letter offering a compromise, and stating that the party was willing to lose a certain sum to settle the case, but omitting to state that the writer was indemnified against that loss, is not evidence against him, in an action brought by him on the promise of indemnity—the existence of which had been denied by defendant before the letter was written.

A. having received goods from B. for the purpose of protecting them from the creditors of B., was about paying over the proceeds to the rightful owner, but on receiving a promise of indemnity from C., applied them to a debt due by B. to C. In an action on the contract of indemnity, C. cannot avoid his promise on account of the fraud in the original transaction.

In error from the District Court of Philadelphia.

This was an action on an alleged contract of indemnity. The declaration also contained the common counts.

Morris, Hollingshead & Co., of Philadelphia, having goods in the hands of Hoffmans & Co., of Baltimore, gave an order for their proceeds to a firm in the latter city, styled E. F. Brady & Co., composed of the plaintiff below and one William Stockton. The object of this order was a matter of controversy. The plaintiff alleged that it was given by Morris, Hollingshead & Co., to secure his brother E. F. Brady, who was endorsee on certain drafts accepted by them, and then held by the firm of Thomas & Martin, of which the defendant below was a member. The defendant alleged that it was given by Morris, Hollingshead & Co., who were then in difficulty, to cover said goods or their proceeds from the creditors, and not for the purpose alleged by the plaintiff.

E. F. Brady, the plaintiff, received said order, and by means of

it obtained from Hoffmans & Co. two notes, the price of said goods, which he procured to be discounted and claimed to hold the cash proceeds for the security of his brother. But Morris, Hollingshead & Co., alleging that he had not received them for that purpose, demanded them, and the plaintiff was about to give them up, when the defendant below, fearing that his firm could not otherwise procure payment of the drafts held by them, requested the plaintiff to pay the money in his hands to said firm on account of those drafts, and in relief *pro tanto* of the liability of F. E. Brady, his brother, and agreed to indemnify him against loss. This was done. Stockton, the plaintiff's partner, was not informed of the transaction, nor of any part of it. The order, though in the firm's name, was received by the plaintiff, the notes were obtained and discounted by him, the proceeds paid over by him to the defendant, and the indemnity given to him alone.

Rex et al., claiming to be assignees of Morris, Hollingshead & Co., subsequently brought an action of trover against the plaintiff for the notes given by Hoffmans & Co., and recovered damages equal to the principal and interest due upon them. That action was brought against the plaintiff and his partner, Stockton, as E. F. Brady & Co., but Stockton was not served with process, and the judgment was satisfied from the funds of the plaintiff alone.

This recovery being had by Rex, the present suit was brought on the indemnity. During the trial, the court admitted Stockton as a witness for his co-partner, the plaintiff. This was assigned as error. The court also refused to admit a letter from the plaintiff to Rex, offered by the defendant as evidence tending to show that no promise of indemnity was made. This was also assigned as error. This letter had been written after judgment was rendered in Baltimore against the plaintiff below, who was defendant in that action, offering to pay to Rex $1000 in compromise, which he, the plaintiff, was "satisfied to lose," but making no mention of any indemnity. Before the letter was written, Thomas had denied the indemnity.

The other questions arose under the charge of FINDLAY, J., who instructed the jury that if the money paid by the plaintiff to the defendant's firm, on account of the drafts drawn by his brother, was paid under a mistaken belief either that the order given was to secure the brother, or that there was an agreement by Thomas, the defendant, to indemnify, he could recover it back under the count for money had and received, though there was no contract of indemnity. He also instructed the jury that even if they found

that the order was given to cover the goods from creditors, that the fraudulent character of such a transaction would not taint the subsequent contract of indemnity, if one were proved.

The points raised are stated in the arguments of counsel.

*Thomas* and *Haly,* for plaintiff in errror.—Stockton was incompetent as a partner in the transaction, and he is liable for contribution to the plaintiff should he fail in obtaining the indemnity. He cannot remove this apparent liability by his own testimony; 1 R. 196.    The letter was evidence of a silent admission by plaintiff that he had no indemnity—otherwise his statement that he would lose a thousand dollars was false.    It is immaterial that it was an offer of compromise.    It was an independent fact admitted, not a concession to bring on a compromise: 2 Stark. Ev. 19; 2 Steph. N. P. 1608; 6 Whart. 430.    The defendant was not liable if the plaintiff paid the debt under a mistake in which they were not concerned: Mo. & Mal. 446; 1 Penna. 140; 2 Barr, 182; 1 Greenl. Ev. § 192; 1 Esp. 144; 3 Ib. 113; 1 Peak. 5; 4 Cow. 617; 4 Conn. 142; 5 Conn. 416; 2 Pick. 285; 4 Ib. 374; 7 Barr, 397.    The transaction originated in a fraud on creditors; and there can be no recovery founded on an indemnity in such case: 3 Raw.172; 1 Steph. N. P. 250; Doug. 450; 3 T. R.551; 2 Ib. 763; 4 Ib. 166; 4 East. 372.

*E. S. Miller* and *St. Geo. T. Campbell,* contrà.—The transaction out of which the cause of action arose was not a partnership one. How could Brady seek indemnity from his partner for a wrongful appropriation by himself of the proceeds of goods consigned to the firm?    The evidence shows it was kept secret from him; and this would be a full answer to such an action.    The letter was not admissible, for there was no such direct admission as is necessary where it was written to bring about a compromise: 2 Camp. 106, n.; 1 Ib. 100.    The plaintiff was not bound to inform Rex & Co. of his having an indemnity, and it is only where he is so bound that his silence amounts to an admission: 1 Greenl. Ev. § 199; 14 S. & R. 393; at all events only so much should have been offered, and not the whole: 3 C. & P. 103.

The instruction that there could be a recovery on the common counts is immaterial, for a calculation will show the recovery was based on the special counts: 1 Pa. 364.    The transaction had no connexion with the illegal contract; that was ended before this promise was made: 11 S. & R. 164; 11 M. & W. 492; 4 W. C. C. R. 300; Story on Cont. § 227.

*March* 19.   ROGERS, J.—This is an action of assumpsit on a contract of indemnity, the declaration containing special and the common money counts.   As the case comes up on certain specific points, we have nothing to do with the merits, which have been commented on so much at large by both sides, except so far as the points connect themselves with the errors assigned.   The case resulted in a verdict for the plaintiff, finding that there was a contract of indemnity and a breach of the contract by the defendant.

No less than seventeen errors are assigned, all of which, except those particularly noticed, were abandoned on the argument or are thought unworthy of particular examination or discussion.

It is, contended the court erred in admitting in evidence the deposition of William Stockton, a former partner of the plaintiff, and in refusing to strike out his testimony, as evidence for the consideration of the jury.   Stockton was undoubtedly *primâ facie* incompetent, for the goods were consigned by Morris, Hollingshead & Co., to the firm of which he was a member, and the suit in Baltimore by Rex, was instituted against him as one of the firm. We cannot, then, resort to his testimony to sustain his competency, for there is no principle better settled than that a witness *primâ facie* incompetent cannot make way for his admission by his own testimony: Griffith *v.* Reford, 1 R. 196, and other cases.   Throwing then his testimony out of the question, does it appear *aliunde* that the witness was uninterested in the event of the suit—would he gain or lose anything by the result of the verdict?   If his testimony goes to increase a fund in which he is entitled to participate, or if he is liable to contribute, he is clearly incompetent: Wilkinson *v.* The Turnpike Co., 6 Barr, 398.   On a view of the whole case, we think no such interest appears as to amount to a disqualification.   We view it not as an affair of the partnership, but a transaction with the plaintiff alone, as well in the consignment by Morris, Hollingshead & Co. to Brady, as in the indemnity given by the defendant to the plaintiff.   Stockton, who lived in this city with the consignors, one of whom, Hollingshead, was his brother-in-law, was not informed of the consignment, indeed, as appears in the letter of the 20th of August, 1839, was designedly left in ignorance of it.   In the letter of that date, E. Brady to Francis Brady, the former, speaking in relation to the consignment, says "Stockton is and will be ignorant of this."   The same thing appears in the testimony of Francis Brady, who also proves that the indemnity was given to the plaintiff and not to the firm.   The partnership, although existing at the time of the consignment, has been since

dissolved, on terms, however, which only appear in the testimony of the witness, and which consequently cannot be taken into account. The witness, therefore, it is clear, is not entitled to any part of the money which may be recovered in the suit.    And it would be pre-posterous under the circumstances for Brady to attempt to make Stockton liable to a contribution for the money he was compelled to pay to Rex.

There is not the semblance of error in admitting the records of the suits of Rex *v.* Brady.    They were the foundation on which this suit rests, and are *primâ facie* evidence of the breach of the contract of indemnity and of the measure of damages.

The court was right in refusing to admit in evidence the letter of November 3d, 1843, Edward F. Brady the plaintiff to Abraham Rex.

It is not denied that the admissions of a party, either verbally or in writing, before or after the fact, when or wherever made, are competent evidence.    Also the admission of an independent fact, although made in an offer of compromise, is evidence.    So the silence of a party may amount to an admission; an offer of compromise, as well as in other ways, coupled, however, with the important qualifi-cation that the fact said to be admitted is one that in the particular case he is bound to admit or deny: Bowen *v.* De Lattre, 6 Wh. 430; Wallace *v.* Small, M. & M. 448; Brady *v.* Colhoun, 1 P. R. 140; Sailor *v.* Hertzogg, 2 Barr, 182; 4 Conn. 617; Murray *v.* Coster, Hartford Bridge Co. *v.* Granger, 4 Conn. 142; Fuller *v.* Hampton, 5 Conn. R. 416; Marsh *v.* Gold, 2 Pick. 285; Gerrish *v.* Sweetser, 4 Pick. 374; McGill *v.* Ash, 7 Barr, 397; More *v.* Smith, 14 S. & R. 393.    The letter is clearly an offer of com-promise, and as such inadmissible; but it is contended that it is evidence of an independent fact, viz., that, inasmuch as it does not refer to the indemnity, it is fairly to be inferred from the writer's silence on that head no such indemnity existed.    But to this the answer (and we deem it satisfactory) is, as the design of the letter was to effect a compromise, it cannot reasonably be expected the writer would refer to an indemnity, a knowledge of the existence of which would tend to defeat the object he had in view.    Besides, before the letter was written the defendant denied the indemnity, a fact accounting for making the offer without consulting him or making any mention of it.

We perceive no error in charging the jury that if the plaintiff paid the money over to Thomas & Martin, under the mistaken belief that the goods of which it was the proceeds had been assigned

to him to secure the draft of Morris, Hollingshead & Co., the plaintiff may recover on the money counts. That money paid under a mistake of fact, may be recovered back under a count for money had and received, is settled in many cases, and is not now an open question: Tybout v. Thompson, 2 P. A. Br. 27; Miles v. Stevens, 3 Barr, 37; Shearer v. Fowler, 7 Mass. 32; Garland v. Salem Bank, 9 Mass. 414, and other cases. Besides, this error would not avail the defendant, if it can be made to appear by calculation, that the verdict was really rendered on the special counts. By a late act, to which we are inclined to give a liberal construction, we have the power to modify, as well as affirm or reverse a judgment, in either a civil or criminal case.

It remains now to notice the last error to the charge. A fraudulent contract, as between the parties to the fraud, cannot be enforced. This, as a general proposition, is too well settled to admit of dispute: consequently, if the design was to wrest the property from the grasp of creditors, or to delay, hinder, and defraud creditors, it would be fraudulent as well at common law as by the statute. As between the parties to the contract, viz., the plaintiff and Morris, Hollingshead & Co., the court would not lend its aid, but would leave them in the condition it found them. But this principle, which is unquestionable, does not apply to the facts of this case. For, granting that it was the intention of the parties to the original contract, to cover the goods from the claims of the creditors of Morris, Hollingshead & Co., which is the allegation, yet the evidence is, that E. F. Brady was under the impression, and induced his brother to believe, the goods were consigned to secure a debt owing by the firm to him; but afterwards being in doubt whether such was the design, he was about to pay over the proceeds to the consignors, but was prevented from doing so, and paid them to the defendant at his solicitation and upon giving the indemnity, upon which suit is brought. As then between the plaintiff and defendant the contract was bonâ fide without a taint of fraud; indeed, if the testimony is believed, it was brought about by the representations of the defendant himself. He cannot now, after having received the money, attach the fraud (if any existed) of the original transaction to the contract of indemnity. To do so, supposing there was an indemnity, would itself be a fraud. But for the indemnity, the money, we are warranted in believing, would have been paid over to the consignors, which would have ended all responsibility on the part of the plaintiff. This view of the case is fully sustained by the authori-

ties.   Thus, in Swan *v.* Scott, 11 S. & R. 164, Duncan, J., says the test, whether a demand connected with an illegal transaction is capable of being enforced at law, is, whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot open his case without showing that he has broken the law, a court will not assist him.   So it is ruled in Toler *v.* Armstrong, 4 W. C. C. R. 300, that if the promise be unconnected with the illegal act, and is founded on a new consideration, it is not tainted by the act.   Story, in his Treatise on Contracts, § 227, thus states the law: " If an act in violation of either statute or common law be already committed and a subsequent agreement entered into, which, though founded thereupon, constituted no part of the original inducement or consideration, such an agreement is valid."

Judgment affirmed.