## A. Hirsh and M. W. Fraim *v.* D. H. Wenger and J. H Wenger, trading as D. H. Wenger & Brother, and Christian Reedmiller, Appellants.

*Sheriff's interpleader—Fraud—Validity of confessed judgment—Evidence.*

On a sheriff's interpleader to determine the validity of a judgment for a large amount which a son while suits were pending against him had confessed to his father, the execution creditors have a right to show that the father was not of sufficient pecuniary ability to furnish his son the amount of money represented by the judgment; that he was pressed during the time when the alleged advances were being made for money with which to pay his taxes; that his real estate was heavily incumbered, and that he was actually insolvent.

Argued May 17, 1897. Appeal, No. 426, Jan. T., 1897, by defendants, from judgment of C. P. Lancaster Co., Dec. T., 1893, No. 55, on sheriff's interpleader. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Reversed.

Sheriff's interpleader.    Before LIVINGSTON, P. J.

The facts appear by the opinion of the Supreme Court.

At the trial, after plaintiffs' judgment of $7,240 had been introduced in evidence, defendants proposed to ask A. Hirsh whether or not his son, Benjamin W. Hirsh, was indebted to him on April 4, 1893, or on November 11, 1893, in the sum of $7,240 or any portion thereof. Objected to by plaintiffs. Disallowed. Defendants except and bill sealed. [2]

Defendants proposed to ask A. Hirsh what other lien indebtedness he had besides the $21,000 during the period he claims he was loaning money and paying debts for Benjamin Hirsh. Objected to by plaintiffs. Disallowed. Defendants except and bill sealed. [3]

Defendants proposed to ask A. Hirsh whether or not, during the time he claims to have been loaning money to B. W. Hirsh and paying debts for him, his property was not incumbered for taxes. Objected to by plaintiffs. Disallowed. Defendants except, and bill sealed. [4]

Witness, B. S. McLane, was shown paper marked " J. B. L., No. 2," and asked by defendants whether that is a search of the mortgages given by Abram Hirsh, and whether the records stood as this search shows it did, November 11, 1893. It is offered for the purpose of showing the insolvency of Abram Hirsh at the time of the alleged loaning of this money. Objected to by plaintiffs. Disallowed. Defendants except and bill sealed. [5]

Papers marked " J. B. L., No. 3," and " J. B. L., No. 4," admitted to have been made by the deputy recorder, as deeds on record in his office for properties conveyed to Abram Hirsh and the deeds on record for properties sold by Abram Hirsh; it is proposed by defendants to ask the witness whether these lists contain all the properties of which there is a record in his office, purchased by Abram Hirsh, and of the properties sold by Abram Hirsh up to the 11th of November, 1893,—to be followed with the proof of value of these properties,—for the purpose of showing that the value of the properties was not equal to the amount of the deeds. Objected to by plaintiffs. Disallowed. Defendants except and bill sealed. [6]

Defendants offered in evidence certified copy of the liens against Abram Hirsh from April 4, 1888, to April 4, 1893, for the pur-

pose of showing the insolvency of Abram Hirsh at the time of the alleged loaning of this money.

Plaintiffs did not object so far as it showed a judgment to Robert A. Evans. They consented to its offer for that purpose. They objected to its offer unless it is offered as to the judgments held by Robert A. Evans. Disallowed. Defendants except and bill sealed. [7]

John B. Miller was asked this question by defendants : State the amount of the liens discovered by you, upon search of the records, to have been entered against Abram Hirsh from April 4, 1888, to April 4, 1893. Objected to by plaintiffs. Disallowed. Defendants except and bill sealed. [8]

The defendants offered to prove by I. H. Ryan, that he viewed and examined all the real estate which the records of the recorder's office show were conveyed to Abram Hirsh, plaintiff, and not by him reconveyed, and the market value of the same at the time of the issuing of the execution by A. Hirsh v. B. W. Hirsh, and prior thereto. This for the purpose of showing, with the other offer, that, during the time the plaintiff alleges he was lending money to and paying debts for B. W. Hirsh, he, plaintiff, was indebted to other persons, and was insolvent. Objected to by plaintiffs. Disallowed. Defendants except and bill sealed. [9]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* among others were (2–9) rulings on evidence, quoting the bill of exceptions.

*John A. Coyle* and *B. F. Davis*, for appellants.—The judgment under which Hirsh claimed title may be attacked in an interpleader issue: Tisch v. Utz, 142 Pa. 186 ; Yocum v. Kehler, 1 Walker, 84 ; Hartley v. Weideman, 3 Pa. Dist. Rep. 336 ; Stevenson v. Stewart, 11 Pa. 307.

The offers made were sufficient to take the case to the jury and were also admissible : Hartman v. Shaffer, 71 Pa. 312 ; Glessner v. Patterson, 164 Pa. 224 ; B. & O. R. R. Co. v. Hoge, 34 Pa. 214 ; Reinhard v. Keenbartz, 6 Watts, 93 ; Stauffer v. Young, 39 Pa. 455.

*Charles I. Landis* and *J. W. Johnson*, with them *Brown & Hensel*, for appellees.—There was not a particle of evidence of

any kind or description from which even an inference could be made that the judgment confessed by Benjamin W. Hirsh to his father was fraudulent, and did not represent what it purported to represent, and such being the case there was nothing for the court to submit to the jury. It was therefore proper to give binding instructions for the plaintiff: Paul v. Eurich, 3 Pa. Superior Ct. 299.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1897:

These were issues under the sheriff's interpleader act. The facts which gave rise to them are substantially as follows : B. W. Hirsh was the proprietor of a livery stable. D. H. Wenger & Brother and Christian Reedmiller were dealers in feed, and had been supplying Hirsh with feed for his horses. Finding that they could obtain neither payment of, nor security for, their bills they brought action against him on the 9th day of November, 1893. Judgments were recovered in these actions on the 25th of the same month; that in favor of Wenger & Brother being for $980.44, and that in favor of Reedmiller for $1,287.87. Two days after these actions were begun Hirsh confessed a large judgment in favor of his father. A writ of fi. fa. was issued on the same day, and without much loss of time the horses, harness, wagons and other personal property comprising the livery establishment were seized, brought to sale by the sheriff, and sold to the plaintiff in the writ, the father of B. W. Hirsch. The amount of the judgment confessed, the relationship of the parties, the time when the judgment was entered, and the circumstances surrounding the sale were, to say the least, suggestive. The defendants in these cases issued writs of fi. fa. on their judgments as soon as they were recovered, and levied on the same property, kept at the same livery stable. At the sheriff's sale the father appeared and claimed the property as his by virtue of the sheriff's sale made to him on his own judgment. These issues were framed to determine the bona fides of his judgment and the validity of his title.

The allegation of the defendants was that the confession of judgment by B. W. Hirsch to his father and the subsequent proceedings upon it were a fraud intended to hinder and defeat the collection of the debts due them. They depended upon circumstances for the support of this allegation. Among other

things they sought to show that the father was not of sufficient pecuniary ability to furnish his son the amount of money claimed; that he was pressed during the time when the alleged advances were being made for money with which to pay his taxes; that his real estate was heavily incumbered, and that he was actually insolvent. If this proof had been admitted, as we think it should have been, the burden would have been on the father to establish to the satisfaction of the jury that he had the money he claimed to have advanced to his son; that he did advance it in good faith, and that it was unpaid and honestly due when the judgment was confessed. The door should have been opened for an investigation of the alleged fraud, and latitude allowed in examining the circumstances surrounding the alleged advances: B. & O. Railroad Co. v. Hoge, 34 Pa. 214. The principle laid down in Glessner v. Patterson et al., 164 Pa. 224, is applicable to this case. The straitened circumstances of the father·was a fact having an important bearing upon the bona fides of the alleged indebtedness. If his debts and the pressing demands on him for money were such as to render it improbable that he could have raised and advanced to his son the sums claimed, at the time when he asserted it had been done, this went strongly to affect the credibility of his testimony and sustain the allegation of fraud. The second, third, fourth and seventh assignments of error are sustained. The fifth and eighth assignments appear to be to rulings, not turning on the kind of proof offered, but on its relevancy. We think the proof was relevant. The defendants under the peculiar circumstances of this case had a right to show the insolvency of A. Hirsch at the time when he alleged he was advancing large sums of money to a son who was also a bankrupt and utterly unable to return the money so advanced.

Some of the questions raised by the other assignments may become important upon another trial. This is especially true of that raised by the ninth assignment. If, as is alleged, there were large judgments and debts not of record, due from the plaintiff, and he was without property sufficient to pay them, this made a case of actual insolvency which would have been a strong reason for treating the judgment against the son, and the sale by the sheriff of the stock of the livery stable upon the fi. fa., as contrived and executed for a fraudulent purpose.

The judgment is reversed and a venire facias de novo awarded.

In the other case in which Fraim was plaintiff in the court below we see no sufficient reason for disturbing the judgment and it is accordingly affirmed.