# William H. Allen *v.* William A. Line, Appellant.

*Evidence of financial standing—When not admissible.*

Where suit is brought to recover money advanced, it should not be inferred from the cases allowing the widest latitude in the admission of. evidence in questions of fraud, that it is competent for the defendant to give evidence of the pecuniary inability of the plaintiff, nor is the plaintiff to be allowed to show that defendant was possessed of considerable property. The prejudices of a jury are too easily aroused to justify the introduction of such evidence except in cases where it is clear to the judicial mind that it would affect the credibility of other evidence.

*Contracts—Illegal consideration—New contract and consideration.*

The test is whether the consideration for the promise, the breach of which is the cause of action, is a legal or illegal one, and when it appears that it is illegal the action falls; but a new contract, founded on a new consideration, although in relation to the same subject-matter respecting which there had been unlawful transactions between the parties, is not itself unlawful.

*Evidence—Rejection of cumulative evidence not error.*

The appellate court will not reverse for the rejection of evidence, which was also only cumulative, upon an immaterial and undisputed question.

*Province of court and jury—Preponderance of evidence.*

It is the duty of the court in the first instance to decide whether there· is enough evidence to be submitted to the jury, and having once submitted it to them, it is their duty to decide on which side lies the preponderance as this depends on the credibility and not the number of witnesses.

Argued March 14, 1899. Appeal, No. 6, March T., 1899, by defendant, from judgment of C. P. Cumberland, Co., May T., 1897, No. 727, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by BEEBER, J. Dissenting opinion by W. W. PORTER, J.

Assumpsit.   Before E. W. BIDDLE, P. J.

It appears from the evidence that in the year 1893, Kuntz, then county commissioner, agreed with Line, the defendant, that he would appoint any man, from the upper end of Cumberland county, to the office of mercantile appraiser, if Line could name a man who would be of any benefit or advantage to him.   It was alleged that Line agreed with the plaintiff, William H. Allen, to make use of his name and allow Line in fact to be the real mercantile appraiser and to do this work and receive the remuneration therefor.   There was evidence tending to show that the parties having reached the conclusion that such an agreement was illegal, a new agreement was arrived at under which Allen was appointed; that Allen was to employ Line as his assistant and that Allen was to pay Line for his services and the assistance which he should render.   It was undisputed that the fees amounted to $281, of which sum $241 was paid by the county treasurer to Line on the written orders of Allen.   Allen brought suit to recover the money received by Line from the county treasurer under his written orders. It was alleged that when Allen delivered the order to Line he told him the money derived from the payment of the same was to be appropriated to the payment of a certain judgment for which he, Allen, considered himself responsible and on which judgment, it was alleged, he was being pressed.   Both these allegations were contradicted by Line.

[At the trial the defendant being on the stand an offer of his counsel to show that he did the principal work of the mercantile appraisement was rejected and exception noted for defendant.] [1]

An offer was made by defendant to show that plaintiff was indebted to defendant in various sums on other transactions. This by way of set-off.   This offer was rejected, the court ruling:

[If the plaintiff's contention is sustained that the money in suit was placed in the hands of defendant for a specific purpose, to wit: to appropriate the same to the payment of the Berg judgment on behalf of plaintiff, then the defendant will not be permitted to set off any of the proposed items against plaintiff's claim in this case.   If, on the contrary, the plaintiff's contention is not sustained, then the defendant will be entitled

to a judgment without any set-off, and the evidence offered will be superfluous. The objections are sustained and an exception is noted for the defendant.] [2]

Defendant then made the following offer:

[Mr. Miller: We now offer to show by James A. Green, the justice of the peace before whom this case was tried, that at the hearing held on the 24th of February, 1897, the $82.53 note was offered as a set-off in this action before him, and that the amount from the date of the payment on March 2, 1891, is not barred by the statute of limitations.

Mr. Leidich: Objected to for the same reason as before, that if the contention of the plaintiff is the true one, that the money was placed in the hands of the defendant to appropriate to the payment of the Berg judgment, and he has failed to appropriate the money, we are entitled to a return of the money without set-offs.

The Court: The objection is sustained, and an exception is noted for the defendant.] [3]

The defendant being on the stand and under cross-examination, the following offers and rulings were made:

[Mr. Weakley: " Q. What were your circumstances about that time? You have testified that Mr. Allen was not worth anything."

Mr. Miller: Objected to; what is your purpose?

Mr. Weakley: To show the circumstances and relative positions of these two men.

Mr. Miller: Objected to, as immaterial and irrelevant; it does not affect this case one way or the other.

The Court: The objection is overruled, and an exception noted for the defendant.

Mr. Weakley: " Q. What were your circumstances about the time this conversation was held with Mr. Allen? A. I am not just able to say. Q. Were you worth more than Allen at that time? A. Yes, sir. Q. How much? A. I am not able to say. Q. Worth $5,000? A. I might have been. Q. Worth $10,000? A. I don't know. Q. Will you say you are not worth $10,000? A. I don't know whether I was worth $10,000 or not. Q. You won't deny you are not worth $10,000? A. Well, that is just owing to circumstances."

Mr. Miller: " Q. It depends upon how many debts you have to pay for Allen? A. Yes, sir."] [4]

The following offer was made by defendant:

[Mr. Miller: I desire to offer the second and partial account of Hannah Line and W. A. Line, executors of Daniel Line, late of Southampton township, Cumberland county, Pa., deceased, filed May 24, 1897, confirmed by the orphans' court on or about June 22, 1897, for the purpose, first, of showing that the interest on the Martin judgment, for the use of Berg, was paid by the executors of Daniel Line each year, and that the judgment was not pressing, as alleged.   In connection also with the judgment of Samuel Martin, for the use of Herman Berg, against Daniel Line's estate, to show that no execution was ever issued on that judgment, and to show that nothing was ever demanded by legal process of Mr. Allen, or of Daniel Line's estate; and to show that W. H. Allen's name was never connected with the judgment of Herman Berg, but stood against Daniel Line's estate.

Mr. Leidich: Objected to; it does not contradict or tend to contradict matters offered in evidence on the part of the plaintiff; there is no special testimony offered in the trial of this case as to this judgment pressing, execution issued, or anything of the kind.

The Court: The objection is sustained, and an exception noted for the defendant.] [5]

The defendant submitted among others certain points, which points and answers are as follows:

[3. The burden is upon the plaintiff, and the contention of the plaintiff in this case being supported by his oath alone, and that being contradicted and denied by the defendant, and it being incumbent on the plaintiff to make out his case by the weight of the evidence, and, having failed in this respect to establish his case by a preponderance of testimony, he cannot recover, and the verdict must be for defendant. . *Answer:* This point is refused.] [6]

[4. The uncontradicted evidence in this case being that the appointment of Wm. H. Allen as mercantile appraiser was accomplished by means which the law declares illegal and contrary to public policy, and that Wm. H. Allen knew that his appointment was so made when he accepted the office, he cannot, therefore, recover in this action. *Answer:* This point is refused.] [7]

[5. That under all the facts and evidence in this case, the verdict must be for the defendant. *Answer:* This point is refused.] [8]

The court charged the jury in part as follows:

[If the plaintiff's claim were based upon the unlawful arrangement referred to, there would be no difficulty in disposing of it, for it would be so tainted with illegality that the court would instruct the jury that no recovery upon it could be sustained, and therefore the verdict should be for the defendant. The plaintiff, however, contends that the arrangement between him and defendant was entirely changed at or about the time of the visit to ex-Judge Herman's office, and that it was then agreed that the defendant was to assist him in doing the work incidental to the position and was to handle the principal part of the emoluments, and, after deducting the actual expenses and a reasonable allowance for his services, was to apply the remainder to the payment of a judgment held by Herman Berg against him, Allen.

Is this true, gentlemen? . . . .] [9]

[In the event that you fail to conclude that there was an agreement between Allen and Line by which the latter was to appropriate the surplus of the money in his hands to the Berg judgment, then your verdict should be in favor of Line; for, notwithstanding the money was received by him under an unlawful contract, yet as Allen was as deep in the mire as he was, the law will leave the parties in the position in which they have placed themselves, and will not take a fund from one wrongdoer to give it to another.

If, on the other hand, you find that Line obtained possession of the money in trust to turn it over to Mr. Berg in payment of a particular judgment, then your verdict should be in favor of Allen, for such an arrangement entered into after the appointment would be lawful, and upon noncompliance with the terms thereof by Line, Allen may recover from him the sum involved.

We so instruct you now in regard to such an arrangement in regard to the Berg judgment, but we will reserve the legal question therein involved for future consideration, and will receive your verdict subject to its ultimate determination.] [10]

The jury rendered a verdict for plaintiff subject to the ques-

tion of law reserved by the court. The court subsequently entered judgment for the plaintiff, dismissed motion for judgment in favor of defendant non obstante veredicto, filing the following opinion:

After careful reflection upon the main question raised in this case, we are of the opinion that the defendant has no cause to complain either of the rulings or the charge of the court. Whilst it is true that when a plaintiff's claim rests upon an illegal foundation the court will not lend its aid to enforce it, yet where the illegal transaction is not involved in the case trying, but in a matter distinct and collateral, a recovery may be had: Johnson v. Hulings, 103 Pa. 498.

The jury has passed upon the question as to what agreement, if any, was made between plaintiff and defendant at the time they met at ex-Judge Herman's office, and their finding is in accordance with plaintiff's testimony in relation to what then and subsequently occurred. Assuming his statement to be true, the defendant received from him an assignment of some money for a specific purpose to which he subsequently refused to apply it, hence defendant has been guilty of a breach of trust and must return the fund to him who gave it.

It was not clearly explained why the Berg judgment, which plaintiff referred to, was a charge only against the estate of Daniel Line, deceased, yet it appeared that plaintiff treated it as his own debt because it was the outcome of a judgment at one time held against him by J. K. Foreman.

And now, April 12, 1898, the motion for judgment in favor of defendant non obstante veredicto is dismissed, and the prothonotary is directed to enter judgment on the verdict upon payment of the jury fee.

Judgment for plaintiff for $179. Defendant appealed.

*Errors assigned* were (1–5) rulings on evidence, reciting same. (6–8) Answers to defendant's points, reciting same. (9, 10) To portions of the judge's charge, reciting same. (11) The answers to the points and the charge of the learned court to the jury were inconsistent, contradictory, confusing and misleading. (12) In dismissing motion for judgment in favor of defendant non obstante veredicto.

*A. G. Miller* and *W. F. Sadler*, for appellant.—The contract

was contrary to public policy: Gray v. Hook, 4 N. Y. 449;
Fowler v. Scully, 72 Pa. 456; Filsom v. Himes, 5 Pa. 452;
Hunter v. Nolf, 71 Pa. 282.

The plaintiff entered into the contract in his own name for
the benefit of another, and it was, therefore, void as against
public policy. It was an imposition upon the county, which
was entitled to a real principal to execute the contract: Ash-
burner v. Parrish, 81 Pa. 52; Tool Co. v. Norris, 69 U. S. 45.

Contracts which have for their subject-matter any interfer-
ence with the creation of laws or their due enforcement, are
against public policy: Spalding v. Ewing, 149 Pa. 375; Orme-
rod v. Dearman, 100 Pa. 561.

The rule is that the law will not enforce the contract if ex-
ecutory, and, if executed, will leave the parties where it finds
them. The maxim to be applied is: In pari delicto, potior est
conditio defendentis: Root v. Stevenson, 24 Ind. 115; Hutch-
ins v. Weldin, 114 Ind. 80; Dumont v. Dufore, 27 Ind. 263;
Riley v. Jordan, 122 Mass. 231; Davis v. Leonard, 69 Ind.
213; 9 Am. & Eng. Ency. of Law, 882.

Where the weight of the evidence on one side is of such a
character as not to incline the beam at all, then it is as much
a question for the court as if even this scintilla was absent:
Howard Express Co. v. Wile, 64 Pa. 201; Raby v. Cell, 85
Pa. 80.

Inconsistent defenses may be submitted to the jury with in-
structions that if either is sustained, the plaintiff cannot recover:
Stewart v. Dougherty, 12 Leg. Int. 183.

We are not unmindful of the line of cases holding the prin-
ciple underlying all of them, that an agent or attorney who, by
virtue of special authority, has received money, cannot, when
sued by his principal, set off a debt due to himself in a matter
not arising out of his agency, and that by accepting the special
trust he waives the general right of set-off.

But these cases do not touch the principle at stake. In the
one case the agent's special authority or trust was contained in
a written lease, and in the other in a written letter of attorney,
and in both was undisputed. In the case at bar, the alleged
specific parol trust was supported alone by the oath of the plain-
tiff. He was contradicted by the defendant. His statement
was negatived by the legal effect of his unconditional written

order assigning the fund to defendant. He tried to add to the written order by his uncorroborated testimony. Can it be done? Phillips v. Meily, 106 Pa. 536; Jackson v. Payne, 114 Pa. 67; North v. Williams, 120 Pa. 109.

It was error to admit evidence of the wealth or poverty of the respective parties. If there had been no other assignment than the fourth it alone would be enough to reverse the judgment: Woods v. Gummert, 67 Pa. 136; Laidlaw v. Sage, 52 N. E. Rep. 679, 690.

*J. M. Weakley* and *F. E. Beltzhoover*, with them *S. M. Leidich*, for appellees.—The principle underlying all the cases is that an agent who by virtue of special authority has received money cannot when sued by his principal set off a debt due to himself in a matter not arising out of his agency. By accepting the special trust he waives the general right of set-off: Tagg v. Bowman, 108 Pa. 273; Reeside v. Reeside, 49 Pa. 322; Smuller v. Company, 37 Pa. 68.

Appellant contends that it is error to admit evidence of the wealth or poverty of the respective parties.

No such evidence was admitted. When Line was on the stand he stated that Allen "had given me the money to pay the big rent I had." He had also stated that Allen had nothing in the world. He was then asked on cross-examination as to his own circumstances at the time he received the money, and said that he might be worth $5,000 and would not deny that he might be worth $10,000. "The power of cross-examination has been justly said to be the principal and most efficacious test which the law has devised for the discovery of truth. By means of it the situation of the witness with regard to the parties and to the subject of litigation are fully investigated and ascertained."

In this case the defendant being the principal and only witness against the claim, had stated that Allen "had given me the money to pay the big rent I had." Allen had testified that he gave it to him to pay on Allen's debts. There was a direct conflict of testimony and the case turned upon the fact involved in the statement made by Line. Why should not the jury know from Line himself the relative financial condition of Allen and himself? If he had been poor and Allen rich, his story might

not be improbable ; if Allen was poor and Line was rich, the statement was improbable, was preposterous. The probability of a witness's story is always proper for the consideration of the jury. How could the jury say whether Line's story was probably the truth unless they knew the relative financial condition of the parties ?

OPINION BY BEEBER, J., October 9, 1899 :

The first contract made by these parties was that the plaintiff would appoint the defendant his deputy and allow him to do all the work which the law required to be done and to receive all the pay, provided defendant would use his political influence to secure plaintiff's appointment as mercantile appraiser. If the plaintiff, after his appointment had been secured by defendant's political influence, had refused to appoint defendant his deputy and to allow him to receive the pay, it is clear, under the numerous authorities cited by appellant, that defendant would have no right of action against the plaintiff. The reason is that the consideration which the defendant gave plaintiff for this promise, the breach of which would be the cause of action, which consideration was the exercise of the defendant's political influence resulting in the appointment to the office, was not a legal one. The defendant under such circumstances would be required to prove a legal consideration given by him to the plaintiff for the plaintiff's promise to appoint him, and when it appeared that that consideration was the exercise of defendant's political influence, he would be defeated by the operation of the rule, which prevents a plaintiff from recovering where he requires the aid of the illegal transaction to establish his case. The test is whether the consideration for the promise, the breach of which is the cause of action, is a legal or illegal one, and when it appears that it is illegal the action falls.

But this was not the contract upon which the plaintiff brought suit. The undisputed evidence shows that after the appointment was made, it was discovered, upon consulting counsel, that plaintiff could not legally appoint a deputy. Plaintiff proved that it was then agreed between them that plaintiff should serve as appraiser and that defendant should go with him and assist in the performance of the duties, for which assistance plaintiff was to pay defendant whatever was right.

When the pay was due, plaintiff gave defendant an order upon the county treasurer to pay defendant the balance due plaintiff as mercantile appraiser, upon which order defendant collected the money. Plaintiff testified that when he gave this order he instructed defendant after deducting expenses and the amount due him for his assistance, to pay the balance on account of an indebtedness of the plaintiff. The defendant failed to pay the balance on account of plaintiff's indebtedness, but kept it for his own use, and it was this failure to pay the balance in this way that was the plaintiff's cause of action. It is true defendant denied that there was any such instruction, but the jury have found against him. We cannot see why the plaintiff is precluded from recovering from the defendant for this breach of his implied undertaking to pay the balance as directed by plaintiff. The plaintiff did not require the aid of the original illegal transaction to prove his case. In the cases cited on this subject it is frequently said that the plaintiff will fail if the evidence shows that he needs the aid of the illegal transaction to establish his case, but we cannot take this to mean that the mere introduction of evidence of the illegal transaction defeats the plaintiff. The question still remains, does plaintiff need the evidence to prove his case. There are many cases which hold that a new contract, founded on a new consideration, although in relation to the same subject-matter respecting which there had been unlawful transactions between the parties, is not itself unlawful: Armstrong v. Toler, 24 U. S. 258; Lestapies v. Ingraham, 5 Pa. 71; Thomas v. Brady, 10 Pa. 164. This being the rule we think the plaintiff can recover for the defendant's failure to pay the money as directed, even though he and defendant made an illegal contract to secure the plaintiff's appointment as mercantile appraiser. The assignments of error from the seventh to the twelfth inclusive are overruled.

The rejection of the evidence embraced in the second and third assignments of error was proper. This evidence was offered as a set-off to plaintiff's claim, but it is clear that if plaintiff's evidence was accepted by the jury a set-off is inadmissible, because the defendant is found, in plain language, to have violated a special trust, which was to apply the money on a certain account, and of course he could not apply it to his own use by pleading a set-off. If the defendant's evidence of the

contract had been accepted there could be no recovery of any amount against him, and therefore nothing against which there could be a set-off. The evidence embraced in the first assignment was merely cumulative, looking at it in the light most favorable to the defendant, and that, too, upon an immaterial matter, as there was no substantial dispute as to the amount of services defendant rendered. Even though we are convinced, which we are not, that it was error to exclude this evidence, we would not reverse on that account, for, as we have said, it was only cumulative evidence upon an immaterial and undisputed question. Nor can we see an error in the refusal of the court to admit the evidence, rejection of which forms the fifth assignment. It did not contradict, or tend to contradict, any material evidence of the plaintiff. The refusal of the court to affirm the third point of the defendant, which asked it to say that as the burden of proof lay on the plaintiff, and as his case was supported by the oath of the plaintiff alone, and contradicted by that of the defendant, he had not made out his case by a preponderance of evidence and therefore there could be no recovery, forms the sixth assignment of error. We think it was right to refuse to affirm this point. The preponderance of evidence is not determined by a mere count of the witnesses. The learned trial judge told the jury that plaintiff must prove his case by a preponderance of evidence and this was as far as he was required to go in this respect. It is his duty in the first instance to decide whether there is enough evidence to be submitted to the jury, and having once submitted it to them, it is their duty to decide on which side lies the preponderance. This depends so much on the credibility of the witnesses that the proper tribunal to decide it is the jury. The first, second, third, fifth and sixth assignments are overruled.

The fourth assignment is to the admission of evidence as to the relative financial responsibility of the parties to the action. Defendant was a witness in his own behalf. On his cross-examination he said substantially that the plaintiff, at the time of his appointment, was insolvent or worth nothing. He was then asked on further cross-examination whether he himself was not at that same time worth more than plaintiff and worth several thousand dollars, which he admitted to be true. It is evident that these questions were asked to secure answers which

would affect the credibility of defendant's evidence in chief, to the effect that plaintiff had agreed to allow him, the defendant, to have the money sued for to help pay the big rent defendant was then paying.    The rule is undoubted that a party who has been examined in chief as a witness in his own behalf may be cross-examined as to any matters which go to affect his credibility : Huoncker v. Merkey, 102 Pa. 462.    It may be conceded that the evidence in a case may be such that the credibility of a part of it would be seriously affected by showing the relative financial responsibility of the parties to the action, but we do not think this case was such an one.    It is common practice, where several creditors are asserting claims against a common debtor, for some of them to show that the claims of others, based upon an alleged loan, are probably bogus, by showing that the creditors claiming to have made the loan were insolvent at the time it was alleged to have been made : Hirsh v. Wenger, 182 Pa. 246.    The same kind of proof will be admitted where there is a question of fraud, or undue influence in the case : Stevenson v. Stewart, 11 Pa. 307 ; Hartman v. Shaffer, 71 Pa. 312 ; Glessner v. Patterson, 164 Pa. 224.    The plaintiff got the benefit of the principle established by these cases when he proved by cross-examination of the defendant that he, the plaintiff, was worth nothing or insolvent at the time when defendant alleged that plaintiff agreed that defendant was to be given this money to pay his heavy rent.    Whatever of improbability was imparted to defendant's evidence in chief by the insolvency of the plaintiff was thus before the jury, but to permit the plaintiff to go further and prove the probable wealth of the defendant would not, in our opinion, increase that improbability.    We do not think the trial judge could presume that the possession of property by the defendant rendered it improbable that plaintiff would have given him money to pay big rent, for it is not at all uncommon for men of considerable wealth to be sometimes in pressing need of ready money.    We think such evidence is excluded by the principle established in Woods v. Gummert, 67 Pa. 136.    In that case it was held, in a suit by the plaintiff to recover money which he alleged that he had advanced to the defendant, it was inadmissible to prove that an execution, issued against the plaintiff some time before the advances were alleged to have been made,

had been returned nulla bona. It was there said that when a suit is brought to recover money advanced it should not be inferred, from the cases allowing the widest latitude in the admission of evidence in questions of fraud, " that it is competent to the defendant to give evidence of the pecuniary inability of the plaintiff and thus raise an issue entirely collateral. What legitimate inference in such a case can be drawn from the insolvency of the plaintiff? Men heavily indebted and even keeping their creditors at bay, often have large transactions in borrowing and lending and are possessed of considerable sums of money. If the defendant is allowed to show that the plaintiff owes debts which he does not pay, the plaintiff may certainly rebut the evidence by showing that he has a good defense to them. Thus, innumerable collateral issues might be introduced." So in this case it may be pertinently asked, what legitimate inference can be drawn from the fact that the defendant was possessed of considerable property? Men of considerable wealth are often so involved in their business that ready money is an imperative necessity. If plaintiff is to be allowed to show that defendant was possessed of considerable property, surely defendant may rebut such evidence by showing that he was in pressing need of ready money, and thus innumerable collateral issues would be introduced to the confusion of the real issue. The prejudices of a jury are too easily aroused to justify the introduction of such evidence except in cases where it is clear to the judicial mind that it would affect the credibility of other evidence. For these reasons we are compelled to sustain the fourth assignment of error.

Judgment reversed and venire facias de novo awarded.

W. W. PORTER, J., dissenting:

The defendant procured the plaintiff to be appointed mercantile appraiser by the county commissioners of Cumberland county for the year 1894. Prior to the appointment the plaintiff, who was the defendant's uncle, agreed with the defendant that he would, if appointed, make the latter his deputy, and that under this arrangement, the defendant should do all of the work and receive all of the compensation.

The appointment having been made, the parties consulted counsel, and were then advised that the mercantile appraiser

was required by law to act personally and not by deputy. This was not what was contemplated by the parties. They then made an arrangement by which the defendant was to assist the plaintiff in the work; receive the compensation, deduct his expenses and compensation for his work, and, as alleged by the plaintiff but denied by the defendant, apply the balance to the payment of a certain indebtedness of the plaintiff. Each performed a share of the work. The money was paid to the defendant on orders on the treasury drawn by the plaintiff. The plaintiff now claims that the defendant failed to apply the balance, remaining after deducting expenses and compensation, to the payment of the plaintiff's debt, and must now repay this balance to the plaintiff.

On the defendant's showing, the contract, as made before the appointment, remained the same after the appointment, unaffected by the fact that the plaintiff was compelled to do a part of the work not theretofore contemplated. He was asked: "Why did Allen say he would give you all the emoluments of the office less expenses? A. He didn't want any, and it was to help to pay my rent." He thus denies that any part of the emoluments was to go to the plaintiff or be applied to the payment of his debt. He contends that the original contract being illegal, as against public policy, and the subsequent arrangement being essentially the same that the latter is unenforceable. The plaintiff replies that the contract sued upon is not the contract made in advance of his appointment, but it is a new contract, different in terms and enforceable in law.

There is no doubt that the first contract made by the parties was illegal and unenforceable under the law of Pennsylvania. It was in the nature of a sale of a public office. It was the equivalent of saying: Procure my appointment as mercantile appraiser and you may have the emoluments of the office. True, the plaintiff says that he did not desire the appointment, but accepted it at the solicitation of the defendant. But whatever the motive, the act must speak for itself. To hold otherwise would be erecting a signpost to the path of evasion. The illegality of procuring an office by purchase could always be cured on the ground of unselfish purpose. In this case, it was the purchase of the influence of the defendant to procure the appointment. The two methods of purchase differ in nothing

in the eye of the law. In Filsom's Trustees v. Himes, 5 Pa. 452, it was held that the procurement of an appointment to office by private influence was illegal and void, Chief Justice GIBSON saying: "There are many American decisions direct to the point that the sale of an office is illegal, and what else is the sale of personal influence to procure it? It is in some sort a sale of the office procured by it, inasmuch as the influence is paid for, of which the office is the fruit."

Again, by the acts of assembly the duties of the office of appraiser are required to be, in large measure, personally performed. The contract of the parties here contemplated the substitution of a deputy. This would have been an imposition upon the people of the county who were entitled to have the duties of the office performed by the appointee himself, and stamps the contract as contrary to law: Ashburner v. Parrish, 81 Pa. 52.

It seems also that the attempt to contract for the performance of all of the duties of the office by any other than the appointee himself, would bring this case within the rule which pronounces void, as against public policy, contracts which have for their subject-matter any interference with the due enforcement of the laws: Ormerod v. Dearman, 100 Pa. 561; Spalding v. Ewing, 149 Pa. 375.

The case of Hunter v. Nolf, 71 Pa. 282, strongly resembles the one before us. Two applicants for appointment to the office of United States assessor agreed that one should withdraw and, if the other should be appointed, that they should perform the services jointly and divide the receipts. The contract was held to be illegal as against public policy. It was also contended that a new contract was made after the appointment, but the court (finding the evidence to be insufficient to sustain this contention), held that a mere confirmation of the old contract could not cure the vice which was inherent in it.

A critical examination of the evidence before us has not convinced me that the contract sued upon is so different from that originally made as to relieve it of the vice contained in the original. It is, on the defendant's testimony, the same contract in terms and in result, save that the plaintiff was to participate in the labors. On the plaintiff's testimony, it is the same contract modified to meet new conditions. By the rearrangement, the

plaintiff was to perform a part of the labor and receive the benefit of a part of the compensation, as he claims. But the right of the defendant to a considerable portion of the emoluments remained. It can scarcely be said that there were two contracts. One is but a modification, an alteration of the other. If they be two contracts, they are by their similarity in terms and purpose indissolubly bound together. The virus which, under the law, kills the one, poisons also the other. Well has Mr. Justice SHARSWOOD said in Hunter v. Nolf, supra: "Even if there had been an express contract on entirely different terms than those agreed upon before, it ought to be viewed with a considerable degree of suspicion as an attempt to evade a sound and salutary rule of public policy."

Assuming, however, that the second arrangement was a new contract having only a connection with the first, it is held in Swan v. Scott, 11 S. & R. 155, 164, that the test whether a demand connected with an illegal transaction is capable of being enforced at law is whether the plaintiff requires the aid of the illegal transaction to establish his case. This statement of the law has been approved many times : Thomas v. Brady, 10 Pa. 164 ; Scott v. Duffy, 14 Pa. 18 ; Evans v. Dravo, 24 Pa. 62 ; Fowler v. Scully, 72 Pa. 456 ; Bredin's Appeal, 92 Pa. 241 ; Johnson v. Hulings, 103 Pa. 498. Its application to the case in hand leaves the plaintiff without foothold.

The procurement of the appointment to the office, the basis of the first arrangement, was also the reason for and inducement to the making of the altered contract. The appointment of the defendant as assistant instead of as deputy was made by reason of the appointment already procured, and pursuant to the purpose and obligation of the first contract. The reason for the making of the modified agreement was explained by a reference to what had already been done under the first agreement. The plaintiff, in his case in chief, discloses at length the course of the negotiations. He required the aid of the illegal transaction in establishing his case. He coupled, by his own testimony, the first and the second agreements together. If the plaintiff had not disclosed the facts the defendant was at liberty to do so, since it has been held that when a contract or deed is made for an illegal purpose a defendant against whom it is sought to be enforced may show the turpitude of both him-

self and the plaintiff, and a court of justice will decline its aid to enforce a contract thus wrongfully entered into: Bredin's Appeal, supra.

The standard of political morality is held in this country, at least in principle, at a high level. Bargaining for public office is an offense of such gravity as to warrant expressions of strongest condemnation, and all that grows out of it comes into a court clouded with suspicion. " The law will not aid in enforcing any contract that is illegal or the consideration of which is inconsistent with public policy and sound morality or the integrity of the domestic civil or political institutions of the state: " Clippinger v. Hepbaugh, 5 W. & S. 315.

I am of opinion that the court below should have directed a verdict for the defendant as requested in the point of charge made the subject of the eighth assignment of error, and allowed the parties to remain in the position in which they voluntarily put themselves, and this, not because of any merit in the defendant who has confessedly violated the law, but because of the necessity of upholding the principles of a sound public policy.

I would therefore reverse the judgment without a venire.