## New York and Pennsylvania Co. v. Cunard Coal Co.

*Province of court and jury—Conflicting evidence—Judgment n. o. v.*

1. A motion for judgment *n. o. v.* will not be granted where the evidence is conflicting and a verdict contrary to the contention of the mover could be upheld.

2. Where the question involved is whether one of the parties to a contract knew of defective performance by the other party and acquiesced therein, the latter is not entitled to binding instructions, although his contention is sustained by certain letters, when there are other letters in evidence which, together with the oral testimony at trial, tend to show that there was absence of such assent.

*Illegal contracts—Action based, not on the illegal contract, but upon other considerations.*

3. Where suit is not based upon the illegal transaction, but upon the failure of defendant to perform his part of a contract for the performance of which he has been paid, the action may be maintained to recover the money so paid if the right of recovery depends upon other considerations than the illegality of the transaction, and in such action the mere introduction of evidence of the illegal transaction will not defeat the claim.

4. A consumer, being in need of coal during the control of fuel by the Fuel Administration, in consideration of the faithful performance by the vendor of a contract for the sale of coal, entered into a secret agreement to pay an additional compensation of $30,000, in violation of the Lever Act. By the terms of the contract, the coal was to be sold by railroad weights, as distinguished from tipple weights. Before the expiration of the contract, vendee, believing that its terms had been faithfully performed, paid for the coal as required by the contract and also paid the $30,000. Thereafter, it discovered that the coal had been delivered by tipple weights, and not by railroad weights, and that it had been deceived in regard thereto when it had paid for it. Vendee thereupon, brought suit to recover the $30,000 and the overpayments. The jury rendered a verdict of $30,000 and interest. On motion by defendant for judgment *n. o. v.: Held*, that the action could be maintained, notwithstanding the fact that the money had been paid in violation of the Lever Act, and motion for judgment overruled.

Motion for judgment *non obstante veredicto.* C. P. No. 2, Phila. Co., June T., 1922, No. 9485.

*Thomas Raeburn White*, for plaintiff.

*Hepburn, Dechert & Norris*, for defendant.

New York and Pennsylvania Co. *v.* Cunard Coal Co.

GORDON, JR., J., Sept. 1, 1925.—This is a suit by the New York and Pennsylvania Company against the Cunard Coal Company for damages for an alleged breach of contract by the latter company in connection with the sale by it to the plaintiff of 102,000 net tons of coal, under a contract partly written and partly oral, covering the year beginning April 1, 1918, and ending March 31, 1919. The jury rendered a verdict in favor of the plaintiff for $40,805.01 (including $30,000 and interest) and the defendant moves for judgment *non obstante veredicto.*

The evidence discloses that on three successive years, including the year covered by the contract in suit, coal was sold by the defendant to plaintiff under three written contracts, the terms of which, so far as this suit is concerned, were substantially the same; each of the three contracts containing similar provisions respecting the methods of making settlements for coal sold under them. The 1916 contract, expiring on March 31, 1917, provided that "original railroad weight shall govern settlements;" the 1917-1918 contract provided that "actual railroad weights on scale nearest loading point shall govern all settlements;" and the 1918-1919 contract provided "actual railroad weights on scale nearest loading point to govern all shipments.".

It was undisputed that during practically the entire time of the running of these three contracts mine or tipple weights were furnished by the defendant to the plaintiff, and settlements were made on the basis of these weights. The plaintiff claimed that it did not know that the defendant was furnishing tipple weights to it instead of "railroad scale weights" or "actual railroad weights" until after March 31, 1919, when the term of the last of the three contracts had expired, and that the method adopted by the defendant in billing coal shipped under the contract had deceived the plaintiff into the belief that it was being billed and settlements were being made upon the basis of actual railroad weights. This suit was, therefore, brought to recover damages for this alleged breach of the contract.

The plaintiff endeavored to show that the difference between tipple weights and railroad scale weights favored the defendant by an average of several thousand pounds per car, and sought to recover on the basis of such average by showing the difference between the tipple and railroad weights on cars actually weighed by the railroad for checking purposes. The trial judge instructed the jury, however, that, inasmuch as the evidence discloses that approximately only sixty cars out of a total of upwards of 5000 were weighed on railroad scales, and in only a fraction of these had the plaintiff shown a difference in weight favoring the defendant, there was not sufficient evidence to sustain any estimate of a total shortage in the entire shipment of 5000 cars, and directed the jury to award nothing on account of this item of alleged damage. In this feature of the suit, therefore, the jury's verdict was in substance for the defendant.

An additional item of damage, however, was claimed by the plaintiff, upon which the jury rendered a verdict in its favor. The facts connected with this item were as follows: A short time previous to the execution of the last of the three contracts in question, the president of the defendant company visited the offices of the plaintiff company in New York City and told its representatives, in substance, that his company would not sell them coal at the price fixed by the Federal Fuel Administrator. It being necessary for the plaintiff's business life that it have coal, the result of this interview was that the plaintiff and defendant entered into a so-called "gentleman's agreement," by the terms of which they orally agreed that they should execute the written contract now in suit, the price therein agreed upon being that fixed by the

Federal Fuel Administration, and that, if the defendant should faithfully perform all of the terms of the written contract, the plaintiff would pay to the defendant at the end of the contract term an additional sum of $30,000. This contract, of course, was illegal and was a clear violation of section 25 of the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e), which in plain terms prohibits a seller of coal from asking, demanding or receiving a higher price than that specified in the contract and agreed to by the parties, or a price higher than that fixed by the fuel administrator.

In the early part of January, 1919, less than three months before the expiration of the contract, believing that the contract had been fully and faithfully complied with by the defendant, the plaintiff paid to it the $30,000 thus agreed upon. Payment was made by a check drawn to the order of the defendant, and a receipt false in fact was given, indicating that the payment was made on account of coal to be delivered in the future and after the expiration of the pending contract. This false receipt was intended to conceal the illegal nature of the transaction. After the receipt of the check, the president of the defendant company, by a series of endorsements and jugglery on the books of his corporation, further endeavored to conceal the true purpose of the payment. The true facts, however, were as stated, are disclosed in the evidence and are undisputed. The trial judge instructed the jury that if, under the evidence, they should find the defendant had breached its contract by deceiving the plaintiff as to the kind of weights furnished to it, and by making settlements on tipple weights rather than on railroad scale weights, as the contract provided, the plaintiff would be entitled to recover the $30,000 paid under the oral agreement, together with interest, since the agreement to pay it, and the payment made thereunder, was conditioned upon a full and faithful performance of the written contract by the defendant.

The motion for judgment *non obstante veredicto* is based upon two grounds: First, that the evidence discloses without contradiction that the plaintiff knew the defendant was furnishing tipple weights and that settlements were being made on that basis, and that by continuing, without objection, to accept coal and to make settlements on the weights furnished, the plaintiff ratified and consented to such modification of the terms of the written contract; and, second, that the $30,000 payment in question was an illegal transaction, that the parties were *in pari delicto*, and that the law does not permit a recovery under such circumstances.

We cannot agree with either of these contentions. With respect to the first, that the uncontradicted evidence discloses that the plaintiff knew and consented to the use of tipple weights instead of railroad scale weights, the defendant relies upon certain correspondence which the plaintiff had with the defendant and officers of the railroad, particularly the letters of July 23, 1917, July 24, 1917, June 28, 1918, June 29, 1918, and July 5, 1918. While, of course, these letters, standing alone, indicate probable knowledge on the part of the plaintiff that the terms of the contract respecting the weighing of coal were not being strictly followed, and might have supported the verdict had it been for the defendant, nevertheless, when they are considered together with the large mass of other correspondence and the oral testimony given at the trial, the question of the plaintiff's knowledge of, and consent to, the practice was clearly one for the jury, whose verdict the defendant has not questioned by a motion for a new trial. A motion for judgment n. o. v. will not be granted where the evidence is conflicting and where a contrary verdict could be upheld. That such is the character of the evidence in this case has been decided by our Supreme Court in the case of New York and Pennsyl-

vania Co. v New York Central R. R. Co., 280 Pa. 297, in which this same contract, the same alleged breach and the same question of the plaintiff's knowledge of it were in issue in a suit against the railroad company for an accounting for alleged excess freight, and in which Mr. Justice Simpson held that: "Appellants ( defendants) claim that plaintiff knew, or by the exercise of reasonable diligence could have ascertained sooner, that tipple weights were being used, and, hence, was guilty of such laches as to prevent recovery. Upon ample evidence the court below found that plaintiff had no such knowledge, and that finding is binding upon us: Hardinge v. Kuntz, 278 Pa. 232." This question of fact, therefore, was one for the determination of the jury, and we cannot disturb their finding in this particular. With respect to the second ground upon which the motion for judgment non obstante veredicto is based, that the transaction was illegal under the Lever Act, that the parties were in pari delicto, and that the law will not aid a guilty party to recover money so illegally paid, there seems little doubt, under Federal decisions, that this contention is correct: Detroit Edison Coal Co. v. Wyatt Coal Co., 293 Fed. Repr. 489; Mancourt Winters Coal Co. v. Ohio & Michigan Coal Co., 187 N. W. Repr. 408 (Mich.) ; Morris Adler & Co. v. Jones & Co., 94 So. Repr. 816 (Ala., 1922) ; Neil v. Utah Wholesale Grocery Co., 210 Pac. Repr. 201 (Utah, 1922). It should be noted, however, that, while the weight of authority in the Federal courts seems to be thus, there is persuasive authority to the contrary. See Badger Coal and Coke Co. v. Sterling Midland Coal Co., 192 N. W. Repr. 461, which holds that the parties to such a contract as the present are not in pari delicto, and that the consumer, who is primarily intended to be protected by the Federal legislation in question, can recover moneys received by a seller illegally and in violation of the Lever Act.

It will be observed that in the cases cited by the defendant the recovery was sought upon the basis of the illegal payment. In the present case, however, recovery is sought, not upon the ground that the payment was illegal and in violation of the Lever Act, but because of a breach by the defendant of the terms of the contract. The suit is not based upon the illegal transaction, but upon the defendant's failure to perform his part of the contract for which the money was paid. It is well settled that if the right of recovery is dependent upon other considerations than the illegality of the transaction, that fact will not prevent recovery.

In Swan v. Scott, 11 S. & R. 155, the court said: "The test, whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case." And, again, in Allen v. Line, 11 Pa. Superior Ct. 517, the court said: "We cannot see why plaintiff is precluded from recovering from defendant for this breach of his implied understanding to pay the balance as directed by plaintiff. The plaintiff did not require the aid of the original illegal transaction to prove his case; . . . it is frequently said that the plaintiff will fail if the evidence shows that he needs the aid of the illegal transaction to establish his case, but we cannot take this to mean that the mere introduction of evidence of the illegal transaction defeats the plaintiff." See, also, Potamkin v. Wells, Fargo & Co., 63 Pa. Superior Ct. 222; Hertzler v. Geigley, 196 Pa. 419; White v. Phœnix Iron Works Co., Supreme Court,. March Term, 1925, No. 61, decided April 13, 1925 [283 Pa. 205].

The payment in the present case was made under an oral contract, under which payment was due only in the event the written contract for the year 1918 to 1919 was fully and faithfully performed. The breach of that contract by defendant is established by the evidence, and this alone justifies the plain-

tiff in recovering money paid under the mistaken belief that the defendant had faithfully performed. The defendant's argument assumes these facts to be established, and invokes the illegality of the transaction as its only ground for retaining money secured by misrepresentation and breach of contract. We see no principle of law or equity which requires us to permit a defendant to retain money which was not only secured in this illegal manner, but also was unearned by a faithful performance of its contract.

The motion for judgment *non obstante veredicto* is, therefore, overruled.