# Deposit National Bank, Appellant, *v.* Beaver Trust Co.

*Promissory notes—Defenses—Suit by endorsee—Illegal contract.*

In an action by a bank on a promissory note, which the bank had discounted, against the endorser, the defendant cannot set up as a defense that the note had been made by a corporation in pursuance of an illegal contract with another corporation, and that this contract resulted in an issue of stock, for some portion of which the company received no consideration, if it appears that the defendant was the president and chief owner of the stock of the corporation making the note, that he was a party to the contract, and that the plaintiff bank had no interest whatever in either corporation. The endorser is estopped by his contract of endorsement from such a defense.

No man can be heard to allege his own turpitude to relieve himself of a liability, resulting to him as the consequence of an illegal contract, to which he was a party.

Where a party seeking to recover is obliged to make out his case by showing an illegal contract or transaction or through the medium of an illegal contract or transaction, then he is not entitled to recover any advances made by him in connection with the contract or money due him as profit derived from the contract; but when the advances have been made upon a new contract, remotely connected with an original illegal contract or transaction and the title or right of the party to recover is not dependent upon that contract, but his case may be proved without reference to it, then he is entitled to recover.

Submitted April 17, 1917. Appeal, No. 35, April T., 1916, by plaintiff, from judgment of C. P. Beaver Co., Dec. T., 1915, No. 413, on verdict for plaintiff in case of Deposit National Bank of Du Bois v. Beaver Trust Company, Administrator of John Spencer, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit on three promissory notes. Before BALDWIN, P. J.

From the record it appeared that two of the notes were for $5,000 each, and the third for $860. One of the $5,000 was in the following form:

$5,000                                    Pittsburgh, Pa., Jan. 5th, 1914.

Six months after date we promise to pay to the order of ourselves Five Thousand............Dollars at Deposit National Bank of DuBois, Pa., without defalcation, for value received.

THE KYOTO POTTERY COMPANY,
John Spencer, President.
Wm. T. Smith, Secretary.

No.          , Due Dec. 5.
Endorsed: The Kyoto Pottery Co.,
John Spencer, Pres.
Wm. T. Smith, Sec.
John Spencer,
Wm. T. Smith,

The other $5,000 note was similar.

The defense to these two notes was that the notes had been given in pursuance of an illegal agreement between the Kyoto Pottery Company and the Bohemian Art Potter Company by which the stock of the latter company was to be increased, and that some portion of the stock of the Kyoto Pottery Co. was sold without the company receiving consideration for it.

The court charged in part as follows:

[This contract is in writing and its interpretation is for the court. The court interprets the contract that

The Bohemian Art Pottery Company of Falls Creek, Pa., shall increase its capital to $70,000, change its name to Kyoto Pottery Company of Pennsylvania, sell $20,000 of its common stock to Kyoto Pottery Company of Ohio, the consideration for said stock being the notes for $10,000 mentioned in the third paragraph which I have just read; and that being the meaning and intent of the contract, the contract is void to that extent, because both by the Constitution of this State and by statutory enactment fictitious issues of stock are forbidden.]    (1)

[The Constitution of the State provides in Article XVI, Section 7, that no corporation shall issue stock or bonds except for money, labor done, or money or property actually received, and all fictitious increase of stock or indebtedness shall be void. Now, that provision of the contract being void, any notes issued by the Kyoto Pottery Company in payment of the stock which is the subject-matter of that illegal agreement would be illegal.]    (2)

[Now, if the bank knew of this illegality of consideration in the contract in pursuance of which these notes were issued, then it would be charged with knowledge of the illegal consideration for the notes, and they could not recover.   You will recall the language of paragraph 3, of the contract providing that the preferred and common stock therein provided for should be deposited at the Deposit National Bank, "to be held in trust and as collateral security for loans, discounts or advances to the amount of ten thousand dollars on notes of the Kyoto Pottery Company of Ohio, endorsed by John Spencer and Wm. T. Smith, present owners and directors of said company, which said notes shall be for six months and the consideration for the $20,000 of common stock herein provided for as set forth in paragraph 1."   Hence the two notes Exhibit No. 1 and Exhibit No. 3, having been issued in pursuance of this paragraph of the contract were issued for an illegal consideration, and if this plaintiff bank had knowledge of the illegality of that con-

sideration at the time it took the notes, the plaintiff could not recover, and your verdict should be for the defendant so far as these two notes are concerned.] (3)

[In view of the—in the view the court takes of the law there is really little for the jury to find in this case. We will submit it to you simply on the testimony of Mr. McCreight, who, you will remember, is the vice-president of the plaintiff bank, to determine whether or not the bank had knowledge of the illegality of that consideration at the time it discounted these notes. Now, the mere fact that Mr. McCreight was vice-president of the bank, and was also an officer, or held several offices in the Bohemian Art Pottery Company, would not be sufficient to charge the bank with knowledge of the illegal consideration for the notes; for even though Mr. McCreight knew as an individual, that the consideration was, in fact, illegal—that is to say, although he knew of the existence of this contract, unless the bank acquired the knowledge in the course of the negotiations which led up to the discounting of the note, the plaintiff would not be charged with knowledge of the illegality of the consideration; but the fact that he was vice-president of the bank, and also treasurer, and possibly secretary, of the Bohemian Art Pottery Company, may be taken into consideration as assisting you in reaching a conclusion that the bank actually knew of the illegal character of the consideration at the time it purchased the note.] (4)

Verdict and judgment for plaintiff for $933.80. Plaintiff appealed.

*Errors assigned,* among others, were (1-4) above instructions quoting them.

*J. Rankin Martin, Homer H. Swaney, W. C. Miller* and *H. B. Hartswick,* for appellant.—This being a suit by an endorsee against an endorser, the rights of the parties must be determined by the contract between the

endorser and the endorsee; and that the validity of the contract or the consideration between the maker of the notes and a third party cannot be taken into consideration: Young's Est., 234 Pa. 287.

These notes not having been paid at maturity, demand for payment having been made and the notes protested for nonpayment, and notice thereof having been given to John Spencer, an endorser, we maintain that his contract of endorsement made him absolutely liable for the payment of said notes, and that the defendant could not avail himself of any want of consideration, failure of consideration, or illegality of consideration, as between the Kyoto Pottery Company and the Bohemian Art Pottery Company.

*Lawrence M. Sebring* and *Agnew Hice,* for appellee, cited: Gearhart v. Standard Steel Car Co., 223 Pa. 389.

OPINION BY HEAD, J., October 8, 1917:

The plaintiff national bank sued to recover the moneys due on three separate negotiable notes. Each one of these notes had been made by a corporation called Kyoto Pottery Company, of which defendant's decedent was president. Each one was endorsed by him individually among other endorsers. Two of these notes were in the sum of $5,000 each, the third for $860. The plaintiff bank discounted each of these notes for full value at the ordinary and lawful rate of interest before maturity, and, apparently at least, in the usual course of business. Although none of the facts stated were controverted, the result of the trial was that plaintiff bank secured a verdict for the amount due on the $860 note but was denied the right to recover anything on either or both of the $5,000 notes for which it had admittedly paid $9,700 in money. Upon a verdict to that effect, judgment was entered in the court below and the plaintiff appeals.

The plaintiff easily made out a prima facie case. As the action was by the endorsee of a negotiable promis-

sory note against a prior endorser, as soon as that relation was established our statute declares and defines the obligations and covenants that are its legal incidents. Sections 65 and 66 declare that "Every endorser, who endorses without qualification, warrants to all subsequent holders in due course (1) that the instrument is genuine and in all respects what it purports to be; (2) that he has a good title to it, (3) that all prior parties had capacity to contract, (4) that the instrument is, at the time of his endorsement, valid and subsisting." He further engages that on due presentment the instrument shall be paid and that if dishonored and notice thereof be promptly given, he will pay the amount thereof to the holder. At the close of plaintiff's case then the defendant endorser was called on to establish by proof a legally sound defense that would relieve him of the liability that confronted him. What was his line of defense?

He introduced in evidence a contract in writing between two pottery companies, of one of which he was president and chief officer if not chief owner. It provided primarily for the purchase of one company by the other or their affiliation at least. It involved an increase of the capital stock of the company, of which he was president, and that it should raise by a loan the sum of $10,000 to be applied to the improvement of the property in which both companies thereafter would be interested. It provided for the deposit of certain shares of stock with the plaintiff bank to be held as collateral security for loans to the amount of $10,000 on notes of the Kyoto Pottery Company, of Ohio, endorsed by Spencer and Smith, present owners and directors of said company. It was the contention of the defendant the execution of this agreement by him and others resulted in an issue of stock, for some portion at least of which 'the company issuing it received no value, and that as such issue was forbidden by the Constitution and the Act of 1874, it was fictitious and void. He then relied on this remarkable conclusion, drawn from the facts brought

upon the record by his own evidence, namely, that the entire contract was immoral and illegal and that he should therefore be relieved from the liability he had so clearly created when he entered into this contract of endorsement that produced the loan from the bank. The learned court below instructed the jury that if they found from the evidence the bank had knowledge of the existence of this contract, it could not recover anything on account of the notes.

It has been a long time since it was first recognized as a sound principle that no man could be heard to allege his own turpitude to relieve himself of a liability, resulting to him as the consequence of an illegal contract, to which he was a party. It will be observed the present action was in no sense founded upon such contract. The plaintiff national bank was in no way a party to that contract. It does not appear to have been the owner of any stock in either of the pottery companies and the record discloses no interest by it in the execution of that contract. It in no way needs or relies upon that contract in making out its case. Its action is founded upon a subsequent contract and it gave a full and adequate money consideration for the notes it discounted.

In Swan v. Scott, 11 S. & R. 155, Mr. Justice DUNCAN said: "The plaintiff below did not claim through the medium of an illegal transaction, but through a final judgment. The test, whether a demand connected with an illegal transaction, is capable of being enforced at law, is, whether the plaintiff requires the aid of the illegal transaction, to establish his case. If a plaintiff cannot open his case, without showing that he has broken the law, a court will not assist him, whatever his claims in justice may be upon the defendant; and if the illegality be malum prohibitum only, the plaintiff may recover, unless it be directly on the forbidden contract." The principle was again applied in Evans v. Dravo, 24 Pa. 62, and in many later cases down to and including

Potamkin v. Wells Fargo & Co., 63 Pa. Superior Ct. 222. It is pointed out in the opinion of our Brother TREXLER in that case, that in Vandegrift v. Vandegrift, 226 Pa. 254, the Supreme Court, in considering this principle, cited with approval the following from Storey on Agency, "The distinction between the cases where a recovery can be had and the cases where a recovery cannot be had, for money connected with illegal transactions, to be gleaned from all the authorities is substantially this: 'That where the party seeking to recover is obliged to make out his case by showing the illegal contract or transaction or through the medium of the illegal contract or transaction, then he is not entitled to recover any advances made by him in connection with the contract or money due him as profits derived from the contract; but when the advances have been upon a new contract, remotely connected with the original illegal contract or transaction and the title or right of the party to recover is not dependent upon that contract, but his case may be proved without reference to it, then he is entitled to recover.'" If any later authority recognizing this principle be needed it will be found in Mars Nat. Bank v. Hughes, 256 Pa. 75.

There is and always has been a modification of or exception to this general principle where the special facts proven tended to show that the instrument actually sued on was created merely as a subterfuge or medium through which the party suing might recover, what in fact was but the profits or advantage he was to derive from the illegal contract. Of this class of cases was Morrison Run Coal Co. v. Barclay Coal Co., 68 Pa. 173. It would follow therefore that even if the entire contract between the pottery companies could be said to have been illegal, the defendant cannot be heard to set that up as a defense to an action upon a subsequent contract, made with one who had no connection whatever with or interest in the original contract, but who paid a

perfectly good and adequate consideration for the notes upon which it sues.

But upon an entirely distinct principle we think the defendant was estopped to offer such a line of defense. He had become the endorser of a promissory negotiable note which was discounted by the plaintiff bank in due course before maturity and for value. We have seen that by virtue of his contract of endorsement he warranted the existence of certain facts enumerated in the statute. Yet to relieve himself from liability he has been permitted to set up a breach by himself of every one of those covenants of warranty and the plaintiff bank is thereby mulcted with the loss of $10,000. We think again his mouth is closed to make such a defense. In Young's Est., 234 Pa. 287, a bank discounted a promissory note which had been executed by a wife to the order of her husband and endorsed by the husband. After the lunacy of the husband the wife made a new note which was endorsed by her sister and then delivered to the bank. The bank had knowledge of the character of the original transaction and was aware that the married woman was in fact but the surety of her husband. Leaving aside the question of novation first considered, Mr. Justice STEWART declares: "The bank then being the holder in due course, for value, is entitled to the protection which our Act of May 16, 1901, P. L. 194, relating to negotiable instruments gives." He then enumerates the several covenants of warranty which every endorser enters into and continues: "The effect of the statute is to shut off all such defense as is here set up. In so deciding we are in accord with the decisions in other states where like statutory provision governs." He cites with approval the case of Erwin v. Downs, 15 N. Y. 575, in which it was held that in the light of the covenants of warranty included in the contract of endorsement, although the endorsee took the note with the knowledge that the makers were married women, such knowledge "does not deprive him of the right to rely

upon the implied guaranty of the endorser that the makers were competent to contract as parties, nor of the character of a bona fide holder." Also the case of Binney v. Globe National Bank, 150 Mass. 574, where it was held that "While a promissory note between husband and wife is void between the original parties, an endorser when sued on the contract between him and his endorsee is not at liberty to deny the validity of the original note, or the capacity of the maker for the purpose of defeating his or her liability." Mr. Justice STEWART thus concludes: "The views expressed in these cases as to the purpose and effect of the statute rest upon the plain language of the act itself, which admits of no other construction."

In a proper proceeding at law or in equity, with all parties before it, a court might inquire into the question of the validity of all or a portion of the stock increase provided for in the contract but it could not be done, as we view it, either by the learned court below or this court in the case at bar. One of the corporations entering into that contract is no party to this action. The stockholders of the corporation making the increase and the present holders or owners of that stock have not been heard. This action in no way rests upon an effort to enforce the validity of such increased stock as might be, under the Constitution and Act of 1874, declared fictitious and void.

Under these circumstances we are unable to see, as the record now stands, that the claim of this plaintiff could be defeated by anything thus far established by way of defense. We are therefore of opinion the case was tried entirely upon erroneous principles. But there is nothing, as the case is now presented to us, to enable this court to enter a final judgment. At the conclusion of the trial the plaintiff presented a point for binding instructions which was refused. There was no motion for any judgment in the court below under the Act of 1905, nor was any question of law reserved which, be-

fore that act, would have enabled the court to enter a judgment for the plaintiff for the full amount of its claim. We therefore reverse the judgment with a new venire so that the cause may be tried in accordance with the principles of this opinion.

Judgment reversed and a venire facias de novo awarded.