# White, Receiver, Appellant, *v.* Phœnix Iron Works.

*Corporations—Control of one company by another—Fraud—Ratification by acquiescence—Unlawful payment of dividends—Parties—Illegal contract—Counsel fees.*

1. Where one company through stock ownership or otherwise dominates and controls a second corporation, so that fraud may be and is in fact perpetrated, the controlling company cannot set up acquiescence in, or ratification of, the fraudulent acts, by the second company.

2. In such case, protesting minority stockholders or officers of the second company, freed from the dominating influence, may repudiate the fraud.

3. Ratification cannot give effect to an unauthorized corporate act, unless the corporate body or officer, making the ratification, could have authorized the act in the first instance.

4. Payments of dividends unauthorized by the company's charter cannot be ratified.

5. The books and statements of a corporation cannot form the basis for an account-stated, where they were not made with the

idea of closing a transaction, or of asserting a claim or of establishing a final balance.

6. Whether the books and statements can be so considered is a question for the triers of facts.

7. Where one corporation controlling another sells the stock of the second company on a commission basis, and, in order to keep up the price, fraudulently pays out of the proceeds of such sales, dividends on stock already sold, although no dividends had in fact been declared, the second company may recover the amount of such proceeds irrespective of the payment of the alleged dividends.

8. In such case, the second company is not required to set up an illegal contract to support its claim.

9. A fee will not be allowed to an attorney engaged in such stock-selling transactions where its payment was not authorized by the second company, and was not reasonably necessary in furthering the agency for the sale of the stock.

Argued March 18, 1925. Appeal, No. 61, March T., 1925, by plaintiff, from judgment of C. P. Allegheny Co., April T., 1924, No. 2756, for defendant, on case tried by court without jury, in suit of Thomas Raeburn White, Receiver of the R. L. Dollings Company, v. Phœnix Iron Works. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for moneys advanced.

Case tried by the court without a jury. Before CARPENTER, J.

Judgment for defendant for $10,378.87. Plaintiff appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*Percival H. Granger,* with him *Francis F. Burch,* and *Patterson, Crawford, Miller & Arensberg,* for appellant. —Defendant repaid to the Dollings Company the amount which the Dollings Company had paid to defendant's preferred stockholders as a dividend, with

full knowledge that the dividend was illegal, after first participating in its payment to said stockholders, and cannot now compel plaintiff to return to defendant the sum so paid by it.

No formal action of a board of directors is necessary in order to declare a dividend: Childs v. Adams, 43 Pa. Superior Ct. 239.

Repayment of said dividend was made to the Dollings Company with the full knowledge and acquiescence of the existing officers and directors of defendant company and was so shown on the books of both companies for many months and on statements rendered by each to the other for more than a year before any question was raised about it; defendant cannot now compel its repayment to itself; the transaction is closed: Leinbach v. Wolle, 211 Pa. 629; Herron v. Herron, 64 Pa. Superior Ct. 569; South Side Trust Co. v. Tin Plate Co., 252 Pa. 237; Peter's Est., 20 Pa. Superior Ct. 223; Steel v. Glass, 189 Pa. 283.

Where one person or corporation makes a payment to another without having been misled or deceived or having been under any mistake as to the facts, no implied obligation to return the payment arises in law and a suit cannot be maintained for its recovery: Bomgardner v. Blatt, 35 Pa. Superior Ct. 361; Natcher v. Natcher, 47 Pa. 496; Bryson v. Home, 168 Pa. 352.

The fact that the payment of the dividend without having been earned was unlawful does not affect the case; the law will leave the parties where it finds them and will not reopen the transaction where it once has been closed: Kreusler v. School Dist., 256 Pa. 281; Pittsburgh v. Goshorn, 230 Pa. 212; Kuhn v. Buhl, 251 Pa. 348; Vandergrift v. Vandergrift, 226 Pa. 254; McMullen v. Hoffman, 174 U. S. 639; Deposit Nat. Bank v. Trust Co., 68 Pa. Superior Ct. 468; United Security Life Ins. Co. v. Brown, 270 Pa. 264; Conemaugh Brewing Co. v. Bennett, 60 Pa. Superior Ct. 543; Blandi v. Pelle-

grini, 60 Pa. Superior Ct. 552; Landy v. Ins. Co., 78 Pa. Superior Ct. 47; Waugh v. Beck, 114 Pa. 422.

*H. V. Blaxter,* with him *J. Henry O'Neill,* for appellee. —Defendant did not repay to the Dollings Company the amount which the Dollings Company paid to defendant's preferred stockholders: Crum's App., 66 Pa. 474; McLean v. Plate Glass Co., 159 Pa. 112; Felty v. Deaven, 166 Pa. 640.

The equities of the case are not with the Dollings Company.

OPINION BY MR. JUSTICE KEPHART, April 13, 1925:

The R. L. Dollings Co. (herein called plaintiff) and the Phœnix Iron Works Co. are Pennsylvania corporations, the former having its office and place of business in the City of Philadelphia, the latter in Meadville. The Dollings Company was engaged in financing manufacturing corporations and selling their preferred stock on a commission basis. Because of grossly fraudulent conduct, which met its usual fate, the company became insolvent, and Thomas Raeburn White, of Philadelphia, was appointed receiver. In an effort to clean up the wreck he directed suit to be instituted against defendant, wherein he sought to recover $55,883.27, due through an advancement. A counterclaim was set up, and the court below trying the case without a jury, found for defendant.

The Dollings Company procured a loan for the Phœnix Company. When the note evidencing it matured another loan was negotiated, defendant again giving its note endorsed by plaintiff. This note not having been met when due, plaintiff paid the original amount, $100,000, and, after allowing certain credits, demanded the balance set forth above. Defendants admitted the greater part, denying liability for the item of counsel fees, $5,000, and sundry small items aggregating $262. It then set up as a counterclaim the following: In 1922 the Phœnix Iron Company, through plaintiff, effected

a reorganization with a capital of $2,000,000, divided into 20,000 shares of preferred, calling for semiannual dividends of 3½%, and 20,000 shares of common stock of no par value. Plaintiff undertook to sell the preferred on a 20% commission basis, receiving from the sale of $1,966,500 worth of stock a commission of $393,300, remitting the sum of $1,507,759.34, which defendant says is approximately $61,000 short of the entire sum due from this sale of stock. This is denied by Dollings, who claims this sum was advanced as a dividend on the Phœnix account. It appeared that part of Dollings' program, and one of the instruments through which its fraudulent schemes were worked out, was never to permit the preferred stock to default in dividend payment as long as any stock remained for sale. It was immaterial to Dollings that the companies did not earn the money to pay dividends: they must be paid. In this case, as no doubt in others, the Dollings Company, of its own volition, paid the dividends from money received from the sale of preferred stock. The last was the dividend of July, 1922, and the one on which the counterclaim is based. Dollings, not denying the illegal dividend, contends this payment was defendant's act; that it participated in and ratified plaintiff's acts; that the statements and books between the two companies evidence the transaction as a closed one before the obligation on the notes arose; and, as defendant undoubtedly had full knowledge of what was being done, it should not be permitted to take advantage of a wrong in which it participated. The checks for the dividend were signed by the Dollings officers and mailed by them to the preferred stockholders. The Phœnix board of directors did not declare any dividend, and the money used was undoubtedly defendant's capital in Dollings' hands.

In considering this position, it is important to know that the majority of defendant's common stock was owned by plaintiff, and there were many unusual conditions in defendant's charter of reorganization which

gave plaintiff power to regulate, supervise and conduct all of defendant's operations and affairs. The court below has found as a fact that "the agreement of reorganization and defendant's certificate of incorporation both clearly set forth the understanding and agreement that the R. L. Dollings Company should control the policy and management of defendant during the time any preferred stock was outstanding. This domination and control of defendant's policies and actions was exercised by the R. L. Dollings Company throughout the period of the happenings covered by this suit." Since a corporation does not lose its corporate identity when its stock, or a part of it, is owned by another corporation (Monongahela Bridge Co. v. P. & B. Traction Co., 196 Pa. 25, 28; Callery's App., 272 Pa. 255, 262; Ambridge Borough v. Phila. Company, 283 Pa. 5), their acts are independent acts; yet the rule is different where the screen of corporate identity is torn down by fraud through illegal acts and where the charter powers and agreements so interweave the corporate relations between the companies that the fraud may be the more easily perpetrated; in such cases, the doctrine of participation, acquiescence and ratification can no more sustain an act in corporate life than it would between individuals, some innocently affected thereby. Protesting minority stockholders or officers freed from the dominating influence may repudiate the fraud. Therefore defendant's conduct, shown by statements and books, cannot, in the face of fraud, evidence participation and ratification; the acts of the plaintiff in this regard are unavailing.

Ratification cannot give effect to an unauthorized act unless the corporate body or officer making the ratification could in the first instance have authorized the act: 7 R. C. L. 663; 4 Fletcher's Cyc. of Corporations, section 2186, p. 3392; Crum's App., 66 Pa. 474. Here the unlawful act was threefold, one of which could not be ratified by the directors. Defendant's charter pro-

vides, "The holders of the preferred stock shall be entitled to receive out of the *surplus or net profits* of the corporation......dividends at the rate of seven per cent (7%) per annum."

Nor can the books and statements form a basis for an account-stated. They were not made with the idea of closing the transaction, or asserting a claim or of establishing a final balance: 1 C. J. 683. Whether they should be considered as such is for the trier of facts (Felty v. Deaven, 166 Pa. 640), and the learned judge who tried the case flatly refused to so find, but did find, "the officers of the Dollings Company voluntarily and with full knowledge of the facts wrongfully appropriated the proceeds of sales of stock in payment of dividends because they were aware that if a dividend was passed 'their hope of gain was gone.'"

Plaintiff claims that it would be unjust to permit defendant to set off or otherwise recover for the benefit of its own preferred stockholders, the same amount of money which they had previously received in connection with the dividend on July 15, 1922. Defendant is asking that the money received from sale of stock be returned to it. The money which plaintiff paid to the preferred stockholders was a fund voluntarily given for a fraudulent purpose, namely, placing a false value on the preferred stock. What the ultimate result may be in the payment of the balance due is of no concern to plaintiff. It may be Dollings has a claim against the preferred holders; that question will be considered when and as it arises, but such claim will not defeat the right of defendant or its creditors to the balance due from the sale of stock.

Defendant was not required to set up an illegal transaction to support its claim. When plaintiff's case closed it submitted the statement of stock sales made by plaintiff, assuming this contract of sale was not founded on an illegal transaction. To sustain its counterclaim defendant did not require the aid of the illegal dividend

transaction, but when plaintiff replied it did so only on that theory. It endeavored to justify its withholding the balance due from sale of stock through its breach of the law. It thus brought such reply squarely within United Security Life Insurance, etc., Co. v. Brown (No. 1), 270 Pa. 264; Deposit National Bank v. Beaver Trust Co., 68 Pa. Superior Ct. 468, 475; Conemaugh Brewing Co. v. Bennett, 60 Pa. Superior Ct. 543, 552; Blandi v. Pellegrini, 60 Pa. Superior Ct. 552; Landy v. Phila. Life Insurance Co., 78 Pa. Superior Ct. 47, 54.

The court below refused to allow the claim represented by a payment to J. Hector McNeal of $5,000, and the item of $262.14. The payment to McNeal was not authorized by defendant and was not reasonably necessary in furthering the agency of Dollings; the defendant is not, therefore, required to reimburse its agent for the unwarranted payment. As the court below says, the items aggregating $262.14 were not sustained by the evidence.

We have considered all the seventy-six assignments of error. They relate in substance to the matters here discussed; those that do not are immaterial; they are all overruled.

Judgment affirmed.