# New York & Pennsylvania Co. *v.* Cunard Coal Co.

*Contracts — Coal contracts — Tipple weights — Railroad scale weights—Shortages in delivery—Evidence.*

1. Where, under a contract for coal for future delivery by a mining company to a manufacturing company f. o. b. at the mines, the price to be based on railroad scale weights, it turns out that the coal was invoiced and billed at tipple weights and paid at such rates, the manufacturing company cannot recover from the mining company the value of the alleged shortage resulting from such invoicing, if it is shown that plaintiff had knowledge of the manner in which the bills were made out, that he made settlement without objection and that no fraud was practiced by defendant.

2. In such case plaintiff, after showing a difference in weights in seven cars delivered during the running of the contract, which difference had been adjusted, and also a difference in weight of thirty cars after the contract in suit had terminated, cannot claim that damages be assessed, on the assumption of a like shortage in more than five thousand cars which had been delivered during the running of the contract.

*Pleading—Fraud—No particular averment of fraud—Detailed circumstances.*

3. Where there is no particular averment of fraudulent purpose, but the circumstances detailed are depended upon as showing such to be the case, then the facts relied upon must not only be fully and unequivocally averred, but they must point with some degree of certainty to the conclusion contended for; and, in such cases, the intendments are taken most strongly against the pleader, for he is presumed to have stated all the facts involved, and to have done so as favorably to himself as his conscience will permit.

*Contract—Illegal contract — Public policy — Illegal charge for coal deliveries—Recovery for sum paid—Pleadings—Illegality appearing in testimony—Compulsion—Duress.*

4. Although a contract does not directly require any unlawful or improper act for its performance, if the tendency of the contract is to encourage or hold out a reward for a result which can be brought about only by an unlawful act, the contract is opposed to public policy.

5. Where a transaction is illegal, and this fact necessarily appears in the testimony, the courts will lend their aid to neither party, and it is not necessary that such defense appear in the pleadings of record.

6. If a contract has been executed, advances made, or moneys paid cannot be recovered, where illegality appears in the evidence necessarily produced to sustain a judgment.

7. In the absence of compulsion arising from conditions constituting an emergency, making it necessary to submit to unreasonable and unjust demands imposed, the returns of money paid in violation of law cannot be legally compelled.

8. The courts in determining the legality of transactions will look at the substance, and not the mere form.

9. Where a manufacturing company had a continuing contract with a mining company for a supply of coal for its plant at a price specified, and after the war legislation of 1918, fixed a maximum price for coal different from the contract price, the manufacturing company, without compulsion, paid to the mining company a large sum of money in consideration of the latter company complying in all respects with the terms of the contract, such payment was in violation of law, and cannot be recovered back.

Argued January 5, 1926. Appeal, No. 103, Jan. T., 1926, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1922, No. 9485, on verdict for defendant, in

case of New York & Pennsylvania Co. v. Cunard Coal Co.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Appeal, No. 400, Jan. T., 1925, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1922, No. 9485, on verdict for plaintiff, in case of New York & Pennsylvania Co. v. Cunard Coal Co.   Reversed.

Assumpsit for alleged shortage in weight of coal, and to recover back $30,000 alleged to have been improperly paid to defendant.   Before GORDON, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant in No. 103, Jan. T., 1926.   Plaintiff appealed.

Verdict and judgment for plaintiff in No. 400, Jan. T., 1926, for $40,805.01.   Defendant appealed.

*Error assigned* by plaintiff was instruction stated in opinion of the Supreme Court, referring to record by pages.

*Error assigned* by defendant was refusal of defendant's motion for judgment n. o. v., quoting record.

*Thomas Raeburn White,* of *White, Parry & Maris,* for New York & Pennsylvania Co.—Plaintiff was entitled to go to the jury on the question of the amount of its damages for shortage in coal deliveries: New York & Penna. Co. v. R. R., 280 Pa. 297; Sulger v. Dennis, 2 Binney 428; Hartman v. Incline Plane Co., 159 Pa. 442; Ginocchi v. R. R., 283 Pa. 378; Citizens Traction Co. v. Shaffer, 56 Pa. Superior Ct. 544; Hetzel v. R. R., 169 U. S. 26; Schlitz Brewing Co. v. McCann, 118 Pa. 314; Williams v. Phila., 208 Pa. 282; Ruth-Hastings G. T. Co. v. Slattery, 266 Pa. 288.

Plaintiff is entitled to recover money paid in ignorance of shortages in deliveries notwithstanding defend-

ant's original demand for the additional payment was unlawful: Swan v. Scott, 11 S. & R. 115; Allen v. Line, 11 Pa. Superior Ct. 517; Donner v. Sackett, 251 Pa. 524; Kunkel v. Kunkel, 267 Pa. 163; Peters v. Grim, 149 Pa. 163; Stern v. Ins. Co., 269 Pa. 559; First Nat. Bank v. Baer, 277 Pa. 184; White v. Iron Works Co., 283 Pa. 205; Hertzler v. Geigley, 196 Pa. 419.

Even if plaintiff's right of action had been based upon the illegal transaction, it would be entitled to recover in this case because the parties were not in pari delicto: Com. v. Kendig, 2 Pa. 448; Weed v. Cummings, 23 Pa. C. C. R. 27; Thomas v. Richmond City, 79 U. S. 349; Badger C. & C. Co. v. Sterling, 192 N. W. 461; Benton-Harbor St. Joseph G. & F. Co. v. Coal Co., 271 Fed. 216.

Defendant cannot now rely on the alleged illegality of the transaction: Stein & Samson v. Slomkowski, 74 Pa. Superior Ct. 156; Christy v. Robinson, 2 D. & C. 444; Maisel v. Corr & Sons, 277 Pa. 331.

There was abundant evidence sustaining the finding of the jury that plaintiff paid $30,000 to defendant in January of 1919, under the mistaken belief that defendant had delivered coal called for under a certain contract which mistake of fact was induced by the false representations of defendant. Plaintiff was therefore entitled to recover the sum under the principle of implied contract,—the principle that for defendant to retain the money so paid would be to unjustly enrich it at the expense of plaintiff.

The question whether plaintiff knew or was charged with knowledge of the fact that defendant was billing the coal on tipple weights, which were in excess of the true weights, was properly submitted to the jury, and its verdict cannot be disturbed.

*C. J. Hepburn,* with him *Wm. Barclay Lex,* for Cunard Coal Co.—Where action is brought to recover the amount of an alleged shortage in weights of 5,157 cars of coal, shipped over a period of three years—upon

proof that but 67 of the cars were actually weighed (this without fault of the plaintiff), the evidence as to the weights of all or most of which is readily available to the plaintiff—plaintiff cannot prove the shortage, or its amount, by the use of the weights of eight only of said cars, arbitrarily selected by itself for the purpose.

There would seem to be little room for doubt that the parties were in pari delicto here: Detroit Edison Co. v. Coal Co., 293 Fed. 489; Maucourt Winters Coal Co. v. Coal Co., 187 N. W. (Mich.) 408.

A contract founded on an act prohibited under penalty by statute is void: Morris Adler & Co. v. Jones & Co., 94 Southern 816; Meridian Life Ins. Co. v. Dean, 182 Ala. 127; Neil v. Grocery Co., 210 Pac. 201.

There can be no question as to the treatment accorded in law to the parties to illegal contracts, where they stand in pari delicto. This is an action, in affirmance of the contract, for damages for its breach,—the consideration paid "under the mistaken belief that, up to that date, defendant had faithfully performed its contract" —"which mistake was induced by the false representations and conduct of the defendant." The contract was illegal, "and plaintiff, having paid the money, would have no standing in any form of action to recover it back": Levine v. Bank, 281 Pa. 477; Coulon v. Morton, 4 Yeates 24; Nester v. Brewing Co., 161 Pa. 473; Albertson v. Laughlin, 173 Pa. 525; Vandegrift v. Vandegrift, 226 Pa. 254; Kuhn v. Buhl, 251 Pa. 348; Medoff v. Fisher, 257 Pa. 126; Conemaugh Brewing Co. v. Bennett, 60 Pa. Superior Ct. 543; Deposit Nat. Bank v. Trust Co., 68 Pa. Superior Ct. 468.

OPINION BY MR. JUSTICE SADLER, March 19, 1926:

The New York & Pennsylvania Company, plaintiff, was a manufacturer, conducting its business at Lock Haven, in the State of Pennsylvania. It purchased, for use in its plant there, more than 5,000 cars of coal, containing not less than 102,000 net tons, under separate

contracts with the Cunard Coal Company, defendant, made in 1916, 1917 and 1918, the last expiring in the spring of the following year. All was to be delivered at the mine of defendant f. o. b. to the lines of the New York Central Railroad to be carried to Bald Eagle Junction, known also as Mill Hall, and there delivered to the Pennsylvania Railroad Company, which trans-ported it to the point of destination.

The sale prices were to be based on "railroad weights." In order that the transportation company could secure these, it was necessary that each car be moved for several miles beyond the junction point to what were known as the Avis scales, and then returned and delivered to the connecting carrier. The result was considerable delay in transportation, and the railroad company, after weighing thirty cars, notified the defendant that further movement of this character was impracticable if shipments were to be promptly delivered, and in the future cars would be moved to Avis only from time to time so that test weights could be taken. When the coal was delivered f. o. b., what were known as "tipple weights," ordinarily used by mining companies in billing to customers, were taken, the tonnage being calculated after the removal of certain refuse matter, dumped from the mine cars. The railroad company made its charges without scale weighing, on the basis of the schedule of tariffs which it had filed, and, in so far as it was concerned, it was found that the sum collected was too large. The result was a suit to recover for the excess freight paid, which terminated in a judgment in favor of the plaintiff, affirmed, on appeal, by this court. The manner of conducting the business is fully explained in the report of the case referred to (New York & Pennsylvania Company v. N. Y. C. R. R. Co., 280 Pa. 297), and the details need not be repeated here. There was no allegation then made that the plaintiff was aware that the freight bills were not based on scale weights, or that

there was any knowledge by it of the practice which had been followed by the railroad.

The present suit was instituted against the coal company, the seller, to recover damages for alleged shortages in the amount of coal delivered, since it appeared that "tipple weights" were used in billing the charges rather than those determined by use of railroad scales. A very different situation presents itself from that which is found in the suit against the railroad for overcharges. It will first be noted that the coal was sold f. o. b., and that the delivery to the carrier was in effect to the buyer itself: Sales Act, May 19, 1915, P. L. 543. "The general rule is that a delivery of goods to a carrier, pursuant to a contract of sale, is a delivery to the vendee sufficient to pass title to the goods, and the carrier at once becomes the agent of the vendee": Pittsburgh P. & P. Co. v. Cudahy Packing Co., 260 Pa. 135, 139. The railroad rates, under the contracts, were to govern the settlement of the accounts between the parties, and not the invoicing, and a mistake as to the latter would not constitute a breach of the contract. Though the agreements fixed the manner of determining the quantity shipped, the parties themselves could waive performance of the terms that had been designated. That tipple weights were being used in the making out of the bills which were presented and paid clearly appears. As early as 1916, the inspectors of the plaintiff company were examining the manner of determining the tonnage at the mouth of the mines. The first thirty cars were actually put upon the scales at Avis, and the amount charged in the bills sent was found to accord, and during the following three years errors were found in but seven out of more than 5,000 cars, and these differences were duly adjusted between the parties. The letters which are offered in evidence clearly indicate the knowledge on the part of the plaintiff of the manner in which the charges were made, and these written communications, the receipt of which was not denied, could well

have been declared by the court as showing knowledge on part of the plaintiff of the manner in which the accounts were billed: Schmaltz v. York Mfg. Co., 204 Pa. 1, 20.

It is further to be noticed that the statement of claim makes no averment that the use of the tipple weights rather than railroad scale weights was without knowledge on the part of the plaintiff, or that there was any fraud practiced by the defendant. "When there is no particular averment of a fraudulent purpose, but the circumstances detailed are depended upon as showing such to be the case, then the facts relied upon must not only be fully and unequivocally averred, but they must point with some degree of certainty to the ·conclusion contended for; and, in such cases, the intendments are taken most strongly against the pleader, for he is presumed to have stated all the facts involved, and to have done so as favorably to himself as his conscience will permit": Maguire v. Preferred Realty Co., 257 Pa. 48, 52.

The plaintiff alleges over-payment, by reason of the fact that tipple weights were used as a basis for the recovery of damages, and, in support of its claim, showed the difference in amounts appearing in seven cars delivered prior to March, 1919, which had been adjusted between the parties themselves, and also the alleged variance shown in thirty test cars placed upon the scales after the expiration of the 1918 contract. On the basis of the difference indicated, it asked that damages be assessed, on the supposition of a like shortage on the more than 5,000 cars which had been transported since 1916. The record discloses that opportunity was given the plaintiff at the trial to examine the records as to other shipments, but this permission was not taken advantage of. The court below properly instructed the jury that there was no evidence which would justify any calculation of damages which would be other than a guess, and, therefore, withdrew

from its consideration this portion of the claim. It was clear that plaintiff had not produced the best available evidence or, at least, all of it, and what was presented covers largely transactions after March of 1919, when the contract had expired, and this was insufficient to justify the making of an estimate as to the loss. Under such circumstances, no recovery can be had, as held by the court below, and its ruling should be affirmed.

The court below did permit the jury to pass upon one claim of the plaintiff, who insisted that the sum of $30,-000 had been paid in January of 1919 under a mistake of fact, and a verdict was rendered for this amount, with interest. Motions for a new trial and judgment n. o. v. were made by the defendant, and overruled, and, from this decision, the Cunard Coal Company, defendant, appeals.

During the year 1918, Congress passed what is known as the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, section 3115 ⅛e et seq.), made necessary by the war emergency, and by which the maximum price of coal to domestic consumers was definitely fixed, as well as that of the seller who delivered at tidewater. There was a difference in price of some sixty cents in favor of the latter. The Cunard Coal Company desired to take advantage of the right to transport and sell at the higher rate, and so notified the plaintiff. The latter was anxious to be assured of a continuous supply of coal, and made an oral agreement, in December of 1918, to pay a lump sum of $30,000 to the defendant, provided it was given its full requirements at the domestic price, so that its plant at Lock Haven could be kept in working condition. Later, the sum agreed upon was paid, and it is now sought to recover the amount on the ground that it was transferred under a mistake of fact. It is alleged that the additional consideration was to become due only in case the contract was faithfully carried out, and that there was default as to this, because tipple weights

were used in billing accounts, rather than those determined by railroad scales. On this theory it was insisted there may be a recovery back of the bonus paid, since the illegality of the transaction was not directly shown by the testimony of the plaintiff introduced in support of its case in chief. That it was a forbidden arrangement clearly appears from the record. It was a plain attempt to evade the regulations made by the government, and was, therefore, unlawful.

"Even though a contract does not directly require any unlawful or improper act for its performance, if the tendency of the contract is to encourage or hold out a reward for a result that can be brought about only by an unlawful act, the contract is opposed to public policy": 3 Williston on Contracts 3055. "A contract, though in itself neither unlawful in what it promises, nor in the consideration for the promise, may be obnoxious as part of a general scheme to bring about an unlawful result, or may be closely connected with some unlawful plan or act. There is no doubt that on the first assumption, the contract is unlawful": 3 Williston on Contracts 3057.

It is clearly established by our authorities that, where a transaction is illegal, and this fact necessarily appears in the testimony which is produced, the courts will lend their aid to neither party, and it is not necessary that such a defense appear in the pleadings of record: Conemaugh Brewing Co. v. Bennett, 60 Pa. Superior Ct. 543; 3 Williston on Contracts 2867. Where the claim of plaintiff can be made out without showing any wrongdoing, even though the transaction may have had such a basis, a suit may be successfully sustained (Albertson v. Laughlin, 173 Pa. 525; Potamkin v. Wells Fargo & Co., 63 Pa. Superior Ct. 222; Stern v. Liberty Mut. Ins. Co., 269 Pa. 559), and if a new contract has been entered into, though having its origin in an inhibited transaction, a recovery may be had upon the substituted obligation: Swan v. Scott, 11 S. & R. R. 155; Allen v. Line, 11 Pa. Superior Ct. 517; Peters v. Grim, 149 Pa. 163.

So, if the forbidden act is merely incidental, and need not be shown as a part of plaintiff's case, there may be a judgment in his favor: First Nat. Bank v. Baer, 277 Pa. 184; Deposit Nat. Bank v. Beaver Trust Co., 68 Pa. Superior Ct. 468. Likewise, a distinction has been drawn where the parties bear the relation of principal and agent. In such case, the latter will not be allowed to improperly retain funds which come into his hands, on the ground that they were obtained as a result of some illegal transaction: Hertzler v. Geigley, 196 Pa. 419; Elder v. Corr, 9 Pa. Superior Ct. 228.

However, if the contract has been executed, advances made or moneys paid cannot be recovered, where the illegality necessarily appears in the evidence produced: Nester v. Continental Brewing Co., 161 Pa. 473; White v. Phœnix Iron Works, 283 Pa. 205. "Where a contract in restraint of trade is injurious to the public interest, it will not be sustained, although it is reasonable as between the parties": 13 C. J. 478. And money paid for illegal services which have been rendered cannot be reclaimed: 3 Williston on Contracts 3098. The courts will not lend their aid to either party in such cases, and, if the transaction has been consummated, the consideration which has passed cannot be recovered: Coulan v. Morton, 4 Yeates 24.

In the present case, the effort was made by the plaintiff to show that the additional sum of $30,000 had been given in consideration of the promise to comply in all respects with the terms of the contract of sale, and that there had been a failure on the part of the mining company to so do. It therefore claimed that in presenting its proof, the real purpose for the payment, illegal in itself, was not to be considered. In view of the record, however, it is apparent that there was an attempt to evade the provisions of the federal legislation. It is suggested by the court below that the Lever Act was passed to control solely the seller, and not the buyer, and though it was wrongful for the former to charge

more than the maximum price fixed, this cannot be said of the buyer who agreed to pay the excess, and actually did so. The learned court below was of the opinion that the parties were not in pari delicto, and, therefore, the one less in fault was entitled to protection by the court, and should be allowed to recover the sum advanced. There is no evidence that the additional consideration was promised by reason of any compulsion, or as a result of an emergency, making necessary an immediate delivery of coal for manufacturing purposes, or that a like product could not have been obtained from other mining companies at the price fixed by the government.

The same proposition as now presented by the plaintiff was considered by the Circuit Court of Appeals in Detroit Edison Company v. Wyatt Coal Company, 293 Fed. 489. In that case the effort was made to recover back voluntary payments for coal in excess of the maximum price permitted by the Lever Act. It was there held that, in the absence of compulsion, arising from conditions constituting an emergency, making it necessary to submit to unreasonable and unjust demands imposed, the return of the sums advanced could not be legally compelled. The court said in part (page 492): "Conceding that the plaintiff's conduct in the transaction was less reprehensible and less flagrant than that of the defendant, still, without the plaintiff's coöperation with the defendant, the latter's effort would have proven abortive, and there would have been no actual and effective violation of the law. What the plaintiff did becomes of especial interest as bearing upon its legal right to maintain this action to recover back money paid by it by reason of its acquiescence in and coöperation with the defendant, in the assertion of the excessive price for the coal in violation of the Lever Act, and as to which, from our viewpoint, the parties are in pari delicto. It is true the plaintiff paid out money which it need not have done; but that does not avail it,

since in this class of cases the law will not lend itself to afford one of two wrongdoers relief against the other. On the contrary, it will leave them in the position in which they are found." In the cited case, a decision of the Supreme Court of Wisconsin, relied on by plaintiff (Badger Coal & Coke Company v. Sterling, 192 N. W. 461) is referred to and distinguished.

There are certain cases where an illegal transaction has been consummated, and relief is given to one of the parties thereto, as where the injured one is entirely innocent of any attempt to act wrongfully (Burkholder v. Beetem, 65 Pa. 496), or where he is compelled to act under compulsion: 3 Williston on Contracts 3100. But we have no such situation here. The courts, in determining the legality of transactions, will look at the substance, and not the mere form (Kuhn v. Buhl, 251 Pa. 348), and the record in the present case clearly discloses the purpose of the parties, in promising to pay the additional consideration, was to do something forbidden by law. The contract has been executed, and the money paid, and the courts will not lend their aid to compel its return.

The request for binding instructions made by the defendant should have been granted, and, this not having been done, the motion for judgment n. o. v. should have been sustained.

The judgment from which the New York & Pennsylvania Company appealed to No. 103 January Term, 1926, is affirmed, and the judgment against the Cunard Coal Company, appealed to No. 400 January Term, 1925, is reversed, and judgment is here entered for the defendant.